Richard O'BRIEN, Plaintiff,

v.

Albert H. GALLOWAY, Individually and as Commissioner of the Police Department of the Town of Newport, et al., Defendants.

Civ. A. No. 4637.

United States District Court, D. Delaware.

Aug. 15, 1973.

## OPINION

LATCHUM, District Judge.

In this Civil Rights Action, the plaintiff seeks money damages in the amount of $50,000 and reinstatement to his status as a police officer in the Town of Newport, Delaware, from which he was discharged on April 17, 1973. The matters presently before the Court are the defendants' motion to dismiss for lack of jurisdiction over the subject matter and the plaintiff's motion for a preliminary injunction reinstating him as a police officer.

The background facts of this internecine imbroglio are as follows. The plaintiff Richard O'Brien ("O'Brien") had been employed as a policeman in Newport for several years. On January 8, 1973 as a result of town elections, defendant Albert Galloway ("Galloway") became Police Commissioner. Galloway instituted some new and different practices and procedures within the police department with which some of the police officers, including O'Brien, took issue. Complaints and countercharges caused relations between the dissident officers and Galloway to become quite acrimonious. Finally, a grievance was filed by three police officers with the Town Commissioners on April 5 charging Galloway with dereliction of duty, incompetency and discrimination. A closed meeting was held before the Commissioners on April 16 to discuss the complaints.[1] While discussions at the meeting were heated, by the end of the meeting it was resolved that the problems which had arisen were due primarily to a lack of communication and the Commissioners urged the participants to seek reconciliation and establish more accessible lines of communication. Apparently, Galloway and the officers, including O'Brien, promised to cooperate more or less in the future. During one of the stormier moments of the meeting, however, O'Brien and two other officers had removed their badges and walked

L. Vincent Ramunno, Wilmington, Del., for plaintiff.

Thomas Herlihy, III, of Herlihy & Herlihy, Wilmington, Del., for defendants.

1. Galloway, in his capacity as Police Commissioner, is also a member of the Board of Town Commissioners.

out of the meeting. When asked what had happened by some people who were waiting outside the meeting place, O'Brien in effect stated that he would not stay on the police force and let an idiot make a monkey out of him. After this remark, the dissident police officers were persuaded to return to the meeting where, as stated above, a spirit of conciliation ultimately prevailed. The next day, however, the Wilmington Morning News carried an article on the meeting, including the intemperate remarks O'Brien had made outside the meeting place. A reporter for the newspaper had been within hearing distance when he had made his remark. O'Brien was confronted by Galloway and asked if he had made the statement reported in the newspaper. When O'Brien admitted that he probably had, Galloway told him he was discharged. Defendant John S. Hanna, Jr. ("Hanna"), the Mayor of Newport, was present at this confrontation.

Thereafter, O'Brien's attorney wrote to the Town Solicitor, demanding reinstatement on the ground that O'Brien was entitled to a hearing prior to any discharge. In reaction to his demand, the Commissioners held a meeting on April 26 at which it was resolved that O'Brien should remain dismissed, subject to consideration by the Commissioners at a hearing at which O'Brien could present his reasons and evidence for continuing as a police officer if he requested such a hearing. On May 2, the Commissioners sent O'Brien a letter to that effect, which also listed the reasons for his discharge including not only the remarks made on April 16 but also 10 other instances of misconduct on his part alleged by Galloway. O'Brien declined a hearing under the conditions offered by the Commissioners and instead filed the instant suit charging the defendants with deprivation of his constitutional rights to free speech, liberty, property and procedural and substantive due process.

The defendants have raised several grounds for dismissal: first, because the Commissioners are immune from suit for actions taken in their official capacity; second, because the Commissioners in their official capacity are not "persons" within the meaning of 42 U.S.C. § 1983; third, because O'Brien has failed to exhaust his administrative remedies; fourth, because O'Brien deliberately by-passed his administrative remedies by failing to request the hearing offered by the Commissioners; and fifth, because there was sufficient cause to discharge O'Brien. In addition, the defendants Stanley Brown ("Brown"), Frederick Benoit ("Benoit") and Ronald Rew ("Rew") seek dismissal as to them on the ground that the complaint fails to allege any deprivation of O'Brien's rights by them.

The plaintiff has moved for a preliminary mandatory injunction to reinstate him pending further court action on the ground that he had an absolute right to a hearing prior to discharge.

The Court will first treat the grounds for dismissal advanced by the defendants.

The first ground raised for dismissal is that the defendants are immune from suit for actions taken in their official capacity. Concededly, a public official exercising discretion while performing his duty possesses a qualified privilege precluding individual liability for the performance of official responsibilities if undertaken in good faith. Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); Hayes v. Cape Henlopen School District, 341 F.Supp. 823 (D.Del.1972). However, the privilege is not an absolute one and will give way if acts done within the scope of their official duties were performed in bad faith. Bennett v. Gravelle, 323 F.Supp. 203, 213 (D.Md. 1971), aff'd 451 F.2d 1011 (C.A. 4, 1971), cert. den. 407 U.S. 917, 92 S.Ct. 2451, 32 L.Ed.2d 692 (1972); Hayes, supra. Thus, O'Brien's suit will not be barred on immunity grounds if he can establish that the Commissioner's actions were not undertaken in good faith. Since this factual determination goes to

the merits of the controversy on a disputed record, it cannot serve as a ground for dismissal of the action.

The second ground raised for dismissal is that the defendants acting in their official capacities are not "persons" within the meaning of 42 U.S.C. § 1983. In analyzing this issue, it is necessary to focus on the specific relief sought by the complaint. O'Brien seeks money damages and a mandatory injunction reinstating him against all five Commissioners in their official capacities. In addition, he seeks damages and a mandatory injunction to reinstate against Galloway and Hanna individually as well.

 Treating first the claim for $50,000 in damages against Galloway and Hanna in their individual capacities, it would appear that the complaint sufficiently states a cause of action under 42 U.S.C. § 1983. Both 42 U.S.C. § 1983, creating a cause of action, and 28 U.S.C. § 1343(3), its jurisdictional counterpart, refer to deprivations committed by a person acting *under color* of State law. It has been recognized that Congress in enacting § 1983 meant to give a remedy *to parties deprived of constitutional rights, privileges and immunities by an official's abuse* of his position. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L. Ed.2d 492 (1961); Williams v. United States, 341 U.S. 97, 71 S.Ct. 576, 95 L. Ed. 774 (1951); Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L. Ed. 1495 (1945); United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941). Since O'Brien's complaint alleged a bad faith deprivation of his constitutional rights by Galloway under color of his authority as Police Commissioner and member of the Board of Commissioners, and by Hanna under color of his authority as Mayor and member of the Board of Commissioners, he has sufficiently stated a cause of action against them individually under § 1983 and the Court declines to dismiss the claim for damages as to them in their individual capacities.

 Turning next to O'Brien's claim for money damages against all five Commissioners in their official capacities, the Court concludes that it lacks jurisdiction over that claim. Where one seeks damages against city officials in their official capacities, the suit is in actuality one against the city itself, although not formally named as a party, because recovery will be against the public treasury. Governor of Georgia v. Madrazo, 26 U.S. (1 Pet.) 110, 123–124, 7 L.Ed. 73 (1828); Ex parte Young, 209 U.S. 123, 151, 28 S.Ct. 441, 52 L.Ed. 714 (1908); Francis v. Davidson, 340 F.Supp. 351 (D.Md.1972) (Three Judge Court), aff'd 409 U.S. 904, 93 S.Ct. 223, 34 L.Ed.2d 168 (1972). Since the city is not a "person" within the meaning of § 1983, Monroe v. Pape, 365 U.S. 167, 187–192, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Moor v. County of Alameda, 411 U.S. 693, 93 S. Ct. 1785, 36 L.Ed.2d 596 (1973); United States ex rel. Gittlemacker v. Philadelphia, 413 F.2d 84, 86 (C.A. 3, 1969), cert. den. 396 U.S. 1046, 90 S.Ct. 696, 24 L.Ed.2d 691 (1970), this Court is without jurisdiction to assess damages under § 1983 against the defendants in their official capacities which are intended to be satisfied out of the public treasury and this claim will be dismissed.

 A different case results with respect to the injunctive relief sought against all five defendants in their official capacities. Under the doctrine of Ex parte Young, 209 U.S. 123, 159, 28 S.Ct. 441, 52 L.Ed. 714 (1908), when an official acts in an unconstitutional manner, his actions are stripped of their official cloak, and he may be ordered to perform his official duties in a manner consonant with the Constitution. Under this legal fiction, the state is presumed not to accede to unlawful actions taken by one of its officials, so that an order directed to the official to affirmatively correct his action is not being directed against the state. It has consistently been held since Ex parte Young, supra, that suits may be brought against public

officials to enjoin them from invading constitutional rights. Griffin v. County School Board, 377 U.S. 218, 228, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964); see Georgia R. R. & Banking Co. v. Redwine, 342 U.S. 299, 304, 72 S.Ct. 321, 96 L.Ed. 335 (1952). Therefore, the Court refuses to dismiss the claim for reinstatement sought by O'Brien against the defendants in their official capacties.

However, the Court will dismiss the claim for reinstatement asserted against Galloway and Hanna in their individual capacities. As individuals, Galloway and Hanna are powerless to reinstate O'Brien. It is only in their capacities as Police Commissioner and Mayor, respectively, that they possibly could effect such relief.

The third ground asserted for dismissal is that O'Brien has failed to exhaust his administrative remedies, namely by failing to request the hearing that the Commissioners had notified him was available.

The Supreme Court has held on several occasions that the federal remedy is supplementary to any state remedy so that a plaintiff may be permitted to prosecute an action under § 1983 without prior resort to state judicial or administrative remedies. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967); King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); Houghton v. Shafer, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968); Wilwording v. Swenson, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971); Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).

On only one occasion has the Supreme Court appeared to have retreated from its expansive view of § 1983 actions. In Askew v. Hargrave, 401 U.S. 476, 478, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971), the Court took occasion to distinguish *Monroe* and *McNeese* stating that in *Monroe* the administrative remedy, although available in theory, was not adequate in practice, and that *McNeese* held that the assertion of a federal claim in a federal court need not await an attempt to vindicate the *same claim* in a state court. However, in *Hargrave,* the court was discussing the District Court's decision against abstention which had relied upon *Monroe* and *McNeese,* and was there faced with a classic abstention case, one involving a constitutional claim and a state claim based on an unclear state law never considered by the Florida Supreme Court. Because the *Hargrave* decision did not discuss the doctrine of exhaustion at all but was based on abstention and because of the otherwise expansive attitude expressed toward § 1983 actions by the Supreme Court when discussing exhaustion, this Court concludes that no exhaustion of state remedies is required prior to prosecuting a § 1983 action.

Moreover, O'Brien cannot be required to exhaust his state remedies even in light of the standards enunciated in *Hargrave*. The Supreme Court there stated that failure to resort to administrative remedies will preclude a § 1983 suit when the administrative remedies are "adequate." "[T]o be adequate, the procedures must be sufficiently delineated either through statute, regulation or practice to permit the individual and his attorney to accurately assess their responsibilities and opportunities within the administrative process and the probable efficacy of that process." Hayes v. Cape Henlopen School District, 341 F.Supp. 823, 831 (D.Del.1972). There has been no showing by the defendants of a delineated procedure for employees seeking reinstatement. In fact the defendants admit that in the past, public employees of the Town were discharged without notice or a hearing. (Aff. of Hanna, Brown, Benoit, Galloway and Rew, para. 1, Docket Item 25). Moreover, the position espoused by the defendants in their briefs and in oral argument is that public employment is a

privilege, not a property right, so that there is no absolute right to a hearing. Under these circumstances the Court concludes that no sufficiently delineated practice exists which could be deemed an "adequate" administrative remedy under *Hargrave*. Therefore, the Court concludes that O'Brien's failure to exhaust his administrative remedies will not bar his Civil Rights action.

■ The next ground which the defendants assert as reason for this Court to dismiss is that O'Brien deliberately by-passed his administrative remedies. This argument must fall with the exhaustion requirement argument. It would seem logically inconsistent to place an onus on a party for deliberately by-passing an administrative remedy which he was not required to avail himself of in the first place. The defendants cite two cases in support of their proposition. Grayson v. Malone, 311 F. Supp. 987 (D.Mass.1970) and Whitner v. Davis, 410 F.2d 24 (C.A. 9, 1969). There is no similarity between the factual situation in *Grayson* and the case at bar. It is just not applicable here. The reference to the *Whitner* case by the defendants is also puzzling because there the court enunciated a principle consistent with O'Brien's contentions. While the court held that a party who deliberately failed to apply for a *pre-discharge* hearing would be barred from federal court, it stated that the situation would be different with regard to a *post-discharge* hearing.

> "If the state administrative remedy here in question were designed to provide a means of obtaining relief from, or compensation for, a deprivation of civil rights *which had already occurred*, Mrs. Whitner would not have been required to exhaust it .before instituting this civil rights action." Whitner v. Davis, 410 F.2d at 28. (Emphasis added).

This Court holds that O'Brien's deliberate failure to avail himself of the reinstatement hearing offered by the Commissioners subsequent to his discharge will not bar relief sought in federal court and refuses to dismiss on that ground.

■ The fifth ground asserted by the defendants as a reason for dismissing this suit is that the discharge was justified in view of O'Brien's public criticism of his superior. This argument goes to the merits of the case, involves disputed material facts and is inappropriate to consider on a motion to dismiss. Therefore, dismissal on that ground is denied.

■ Lastly, defendants Brown, Benoit and Rew have moved to dismiss as to them on the ground that the complaint fails to allege any deprivation of O'Brien's civil rights by them. The defendants have misread the complaint. Paragraphs 6 and 8 of the complaint read together charge that all the defendants as Commissioners of the Town of Newport had the authority to order him reinstated which would have satisfied his constitutional right to a fair hearing prior to discharge, and yet failed to do so. This allegation is sufficient to make them proper parties to this action in view of the injunctive relief sought. Therefore, the Court declines to dismiss on that ground.

The Court now turns to O'Brien's motion for a preliminary injunction ordering him reinstated pending resolution of his claim for damages. The ground asserted for this motion is that O'Brien has an *absolute* right to a hearing *prior* to discharge. The Supreme Court in Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) stated that before a person is deprived of a protected interest, he must be afforded an opportunity for some kind of hearing absent extraordinary circumstances. Id. at 569–570, 92 S.Ct. 2701. Therefore, in order to determine whether a right to a prior hearing is paramount, it is necessary to determine whether the interests advanced by O'Brien are constitutionally protected. O'Brien asserts deprivation of "liberty", "property" and "free speech" rights.

■ The court in *Roth* indicated that there were cases where a discharge of an employee could impair liberty interests such as where the discharge imposed on the employee "a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." *Roth*, supra at 573, 92 S.Ct. at 2707. As far as "property" rights are concerned, the Supreme Court in Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) held that despite the lack of formal tenure or contract, a property interest could stem from an expectancy of continued public employment arising from less formalistic rules and understandings which have been officially promulgated and fostered. If such a protected property interest were proved, then the public employee would be entitled to a hearing prior to discharge. *Roth*, supra, 408 U.S. at 569–570, 92 S.Ct. 2701.

■ However, from the disputed record before the Court it is impossible to determine whether "liberty" or "property" rights within the meaning of *Roth* are involved. As far as "liberty" rights are concerned there has been no showing of an inability on O'Brien's part to secure other employment. With respect to "property" rights, the parties have submitted conflicting affidavits as to whether a tenure system existed for public employment in Newport or whether there was otherwise a general policy of expectancy of continued employment for public employees. In order for the Court to determine whether O'Brien's discharge impaired a protected interest without a prior hearing, it will be necessary to hold a full evidentiary hearing to determine whether "liberty" or "property" interests are involved.

With respect to "free speech" interests, the court in *Roth* suggested that where an employee claims he is being discharged for public utterances critical of his superiors, the alleged impringement on First Amendment rights is not direct and an administrative hearing *prior* to discharge is not mandated. The court stated:

"When a State would directly impinge upon interests in free speech or free press, this Court has on occasion held that opportunity for a fair adversary hearing must precede the action, whether or not the speech or press interest is clearly protected under substantive First Amendment standards. Thus, we have required fair notice and opportunity for an adversary hearing before an injunction is issued against the holding of rallies and public meetings. Similarly, we have indicated the necessity of procedural safeguards before a State makes a large-scale seizure of a person's allegedly obscene books, magazines and so forth.

"In the respondent's case, however, the State has not directly impinged upon interests in free speech or free press in any way comparable to a seizure of books or an injunction against meetings. Whatever may be a teacher's rights of free speech, the interest in holding a teaching job at a state university, *simpliciter*, is not itself a free speech interest."

408 U.S. at 575 n. 14, 92 S.Ct. at 2708. (Citations omitted).

■ Therefore, while O'Brien's utterances *may* have been protected speech [2] which may not furnish the basis for his dismissal from the police force and for which he is entitled to some kind of hearing, Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), he did not allege such a direct infringement of free speech rights as would have entitled him to a hearing *prior to discharge*. The Court will deny O'Brien's motion for a preliminary injunction reinstating him on the ground that he had an absolute right to a prior hearing because his right of free speech was involved.

2. Of course, the Court is not now passing on the question whether O'Brien's remarks regarding his superior were protected speech.

Whether or not O'Brien was entitled to a pre-discharge hearing because there were other protected interests directly impinged, namely "liberty" and "property" remains to be determined from a full hearing.

An order will be entered in accordance with this opinion.