MR. IR. CH. H. VAN BRONCKHORST *v.* JACK I. TAUBE, M.D., JOSEPH B. QUIGLEY, M.D.

[No. 2-574A124. Filed February 18, 1976. Rehearing denied March 17, 1976. Transfer denied August 24, 1976.]

*Ir. Ch. H. van Bronckhorst,* Pro Se.

*James V. Donadio, Margaret C. Attridge, Ice Miller Donadio & Ryan,* for appellee Taube; *James E. Rocap, Jr., Rocap, Rocap, Reese & Young,* of Indianapolis, for appellee Quigley.

SULLIVAN, J.—Plaintiff Ir. Ch. H. van Bronckhorst filed this malpractice action against Doctors Jack I. Taube and Joseph B. Quigley on June 18, 1973. The doctors moved to dismiss the complaint under Ind. Rules of Procedure, TR. 12(B)(6), as being barred by the Malpractice Statute of Limitations, Ind. Ann. Stat. 34-4-19-1 (Burns Code Ed. 1973). The defendants' motions were granted. Plaintiff appeals the dismissal.

For purposes of this appeal, the allegations of van Bronckhorst's complaint must be taken as true. *Millen* v. *Dorah* (1974), 161 Ind. App. 430, 316 N.E.2d 403; *Sanders* v. *Stewart* (1973), 157 Ind. App. 74, 298 N.E.2d 509; *Gladis* v. *Melloh* (1971), 149 Ind. App. 466, 273 N.E.2d 767. Moreover, every reasonable inference and intendment must be drawn in his favor from the alleged facts. *Citizens Nat'l Bank of Grant County* v. *First Nat'l Bank of Marion* (1975), 165 Ind. App. 116, 331 N.E.2d 471; *Farm Bureau Ins. Co.* v. *Clinton* (1971), 149 Ind. App. 36, 269 N.E.2d 780.

The complaint consisting of six full legal pages alleges in lengthy detail the "facts" we must accept as true. The allegations are as follows: On January 16, 1963, van Bronckhorst went to Dr. Taube "to have dirt, which was blown in his eye, taken out." After examining plaintiff, Taube told him that the examination had revealed "a high pressure in his right eye, which though has nothing to do with the dirt nor any eye disease. . . ." Taube performed what he had told van Bronckhorst would be "a very simple surgery" upon the right eye. Plaintiff maintains that "as a result of this so-called simple surgery, plaintiff have [*sic*] lost his right eye sight. . . ."

Dr. Taube continued to treat van Bronckhorst for some five weeks after the surgery. During this period, in response to plaintiff's repeated queries as to the nature of his condition, Taube told van Bronckhorst that his right eye was damaged by glaucoma which would "jump over to plaintiff's left eye in approximately five (5) years, and that plaintiff would be entirely blind within ten (10) years." When asked what could be done about the glaucoma, Taube repeatedly answered as per the verbatim allegation of van Bronckhorst's complaint:

> "Nothing, probably if you, after certain time, would be entirely blind and the glaucoma is ripe for a surgery, but that is of future concern, at this time I really don't know anything more which could be done, you have not to return more for further eyes treatment, unless certain additional eye troubles made it necessary to come back."

After Taube's last repetition of this gloomy prognosis, van Bronckhorst, "almost sure that defendant Taube has [sic] injured plaintiff's right eye, was intending to bring an action for injury. . . ." Plaintiff consulted an attorney and wrote a letter to the Consulate General of the Netherlands (plaintiff is a Dutch immigrant who arrived in this country in 1962) inquiring as to what could be done to get redress from Dr. Taube. Plaintiff was advised to seek additional medical opinion to corroborate his suspicions before taking any legal action. Acting upon this advice, van Bronckhorst went to see defendant Dr. Quigley in July of 1963.

When van Bronckhorst met Quigley in July, he told the doctor "the purpose of his visit", and was advised to return for a thorough examination on October 8, 1963. At the examination, plaintiff told Quigley about the surgery performed by Taube and Taube's opinion that plaintiff suffered from glaucoma. He further informed Quigley that he, van Bronckhorst, suspected that Taube's surgery, rather than any glaucoma, was the cause of the loss of his right eye sight. Plaintiff then told Quigley that he wanted to know "the cause of the dis-

appearance of that right eye vision; and . . . what can be done to restore that right eye sight."

van Bronckhorst alleges that, following the examination Quigley told him that "plaintiff's right eye was damaged by glaucoma and not by the act of the doctor; [t]hat he, defendant Quigley, at that time did not saw [sic] the slightest chance to restore plaintiff's right eye vision; [t]hat the glaucoma will jump over from plaintiff's right eye to his left eye within some years to come, and after approximately an equal additional time plaintiff would become entirely blind."

Plaintiff alleges that, after hearing Quigley's opinion:

". . . in reliance upon defendant Quigley's professional judgment, plaintiff not only dropped his intended action against defendant Taube because then he thought that he had made a false and written accusation, but defendant Quigley's professional judgment also caused that he lived [sic] in fear because his thought was cought [sic] with fear that there will come a time that he would be wholly blind."

Some eight years after his visit to Quigley, van Bronckhorst, still without sight in his right eye, volunteered to help Mrs. Chloe Bredahl, a neighbor, by chauffering her to her regular doctor appointments. Mrs. Bredahl, wary of plaintiff's ability to see well enough to drive, induced him to accompany her on her regular visit to her own eye specialist, Dr. K. H. Stephens, on November 29, 1971.

After examining plaintiff, Dr. Stephens disclosed his belief that plaintiff was *not* suffering from glaucoma but that van Bronckhorst had "a good eye hidden behind the damage, even a better eye than this left eye, but because that right eye is all the time trying to see around the damage . . . his right eye focus is out of line, which made it impossible for me to open [sic] that eye, since, by doing that, he will see double. . . ." Dr. Stephens concluded his diagnosis, as alleged in the complaint with these words: "If he came to me

within a year after the damage was caused, I could surely safe [sic] that eye."

Less than two years after his visit to Dr. Stephens, van Bronckhorst filed this action against both Taube and Quigley for malpractice.

Plaintiff's pro se complaint is drawn in two "legal paragraphs", which, read in the light most favorable to plaintiff, allege alternative theories of recovery. Paragraph 2 charges both doctors with malpractice—Taube in his diagnosis and surgery, Quigley in his diagnosis and failure to remedy the damage to plaintiff's right eye allegedly caused by Taube's surgery. Presumably in anticipation of a statute of limitations defense, van Bronckhorst further alleged in paragraph 2 that the defendants were guilty of a concerted fraudulent concealment of the true nature of plaintiff's condition which estops them from raising the statutory bar. In paragraph 1, van Bronckhorst alleged that if his malpractice action *is* barred by the statute of limitations, then the doctors are liable in damages for fraudulently preventing him from timely bringing suit. In dismissing plaintiff's entire complaint on defendants' TR. 12(B)(6) motions, the trial court did not distinguish between plaintiff's alternative theories. Since plaintiff's arguments herein relate only to the propriety of dismissing the malpractice action, we do not consider nor comment upon the cognizability of an action sounding in fraud as alleged in paragraph 1. *See* AP. 8.3(A).[1]

van Bronckhorst asserts that the dismissal of his malpractice action is contrary to law in two respects:

1. Defendants' alleged fraudulent concealment of the true nature of plaintiff's condition permits avoidance of the statute of limitations.
2. The special medical malpractice statute of limitations is unconstitutional as violative of the Equal Protection clause of the Fourteenth Amendment to the United

---

1. Those interested in the treatment given in other jurisdictions to an alledged independent action for fraud in preventing the timley filing of another action are directed to Annot., 33 A.L.R. 3d 1077.

States Constitution and Art. 1, § 23 of the Indiana Constitution.[2]

We reverse without reaching plaintiff's constitutional argument, holding that the complaint alleges in equity a fraudulent concealment sufficient to withstand a TR. 12(B)(6) motion.

## I

## FRAUDULENT CONCEALMENT OF CAUSE OF ACTION AS EQUITABLE DOCTRINE ESTOPS SUCCESSFUL ASSERTION OF STATUTE OF LIMITATIONS

The trial court granted the doctors' respective motions to dismiss on the basis of Ind. Ann. Stat. § 34-4-19-1 (Burns Code Ed. 1973), which reads:

"34-4-19-1 [2-627]. Malpractice—Limitation of actions.— No action of any kind for damages, whether brought in contract or tort, based upon professional services rendered or which should have been rendered, shall be brought, commenced or maintained, in any of the courts of this state against physicians, dentists, surgeons, hosiptals, sanitariums, or others, unless said action is filed within two [2] years from the date of the act, omission or neglect complained of."

The trial court held that plaintiff's complaint is, on its face, barred by the above limitations statute since the defendants' alleged malpractice occurred in 1963 and the action was not filed until June 18, 1973.

van Bronckhorst asserts that his malpractice action is timely because filed within two years of his discovery, by way of Dr. Stephens' diagnosis on November 29, 1971, of his cause of action which had prior thereto been fraudulently concealed by defendants. Plaintiff's argument is bottomed in

2. U. S. Const. amend. XIV, § 1 reads, insofar as pertinent here: "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws."

Ind. Const. art. 1, § 23 states that:

"The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens."

part on his contention that Ind. Ann. Stat. § 34-1-2-9 (Burns Code Ed. 1973) is a statutory exception to the malpractice statute of limitations. Ind. Ann. Stat. § 34-1-2-9 reads as follows:

"34-1-2-9 [2-609]. Concealment of cause of action.—If any person liable to an action, shall conceal the fact from the knowledge of the person entitled thereto, the action may be commenced at any time within the period of limitation, after the discovery of the cause of action."

To the extent that plaintiff's fraudulent concealment argument rests upon Ind. Ann. Stat. § 34-1-2-9 (Burns Code Ed. 1973), it must fail. Our Supreme Court has unequivocally held that the fraudulent concealment statute is *not* an exception to the malpractice statute of limitations. *Guy* v. *Schuldt* (1956), 236 Ind. 101, 138 N.E.2d 891.

Yet plaintiff's appeal is not rendered meritless by *Guy* v. *Schuldt, supra.* Rather, the concealment argument succeeds because of that case. As the Supreme Court stated in a later case:

"It is true this Court did there [in *Guy, supra*] state the 1941 act [the present malpractice statute of limitations] was not subject to the exceptions contained in the 1881 act, [which includes the present fraudulent concealment statute, Ind. Ann. Stat. § 34-1-2-9] but it should be noted the Court's actual holding in such case recognized an exception to the 1941 statute of limitations on equitable principles. We specifically held in that case that the 1941 act which stated 'No action of any kind for damages . . . shall be brought' could not bar a malpractice action based on a negligent act occurring more than two years prior thereto, where there was in equity a fraudulent concealment of the cause of action." *Guthrie* v. *Wilson* (1959), 240 Ind. 188, 193, 162 N.E.2d 79, 81.

See also *Chaffin* v. *Nicosia* (1974), 261 Ind. 698, 310 N.E.2d 867; *Toth* v. *Lenk* (1975), 164 Ind. App. 618, 330 N.E.2d 336; *Meier* v. *Combs* (1970), 147 Ind. App. 617, 263 N.E.2d 194.

The fraudulent concealment doctrine set forth in *Guy* is recognized in the overwhelming majority of jurisdictions. *See* 74 A.L.R. 1320, 144 A.L.R. 215, 80 A.L.R. 2d 401-403. The rule is an ancient one, rooted in equity and "based on the principle that one who practices deceit or fraud, and conceals material facts and thereby prevents discovery of the wrong, should not be permitted to take advantage of his own deceit or concealment by asserting the statute of limitations." *Guy, supra,* 236 Ind. at 107, 138 N.E.2d at 894. Strictly speaking, the doctrine is not an "exception" to the rule of our malpractice limitations statute that the time begins to run "from the date of the act, omission or neglect complained of," but constitutes an equitable estoppel which precludes certain defendants from asserting the statutory bar. The *Guy* court stated the rule as follows:

> "It is established by the overwhelming weight of authority that equity will step in with its doctrine of estoppel to prevent an inequitable resort to the statute of limitations by one who has intentionally and fraudulently concealed a cause of action from a party for such length of time that the statute has run." 236 Ind. at 107, 138 N.E.2d at 894.

## II

## TERMINATION OF PHYSICIAN-PATIENT RELATION-SHIP DOES NOT NECESSARILY END FRAUDULENT CONCEALMENT

Defendants do not dispute the existence of the theory of equitable estoppel for fraudulent concealment but urge the doctrine's inapplicability to these facts. The doctors assert that *Guy* stands for the proposition that fraudulent concealment ceases in all cases simultaneously with the termination of the physician-patient relationship, and that since they both stopped treating plaintiff no later than the end of 1963, the statute bars any action by plaintiff against either of them commenced after 1965. We disagree.

As support for their argument, Taube and Quigley quote the following language from the *Guy* opinion:

> "After the relationship of physician and patient is terminated the patient has full opportunity for discovery and no longer is there a reliance by the patient nor a corresponding duty of the physician to advise or inform. *The statute of limitations is no longer tolled by any fraudulent concealment and begins to run.*" 236 Ind. at 109, 138 N.E. 2d at 895 (Emphasis supplied).

The quoted language, if taken out of context, is supportive of the doctors' position that fraudulent concealment absolutely and automatically ceases to "toll" the limitations statute when doctor and patient part. Such language may not be properly so construed and is in fact anomalous to the holding of the *Guy* case.

In *Guy,* the plaintiff's patient-physician relationship with the defendants terminated in 1941. The plaintiff discovered defendants' alleged malpractice in 1952 and filed his complaint in 1954. Clearly, the *Guy* court would have been compelled to affirm the sustaining of defendants' demurrer if the statute of limitations began to run *as a matter of law* at the termination of the physician-patient relationship in 1941, since under such interpretation it would have "affirmatively appear[ed] from the complaint that the cause [did] not come within any of the exceptions [to the statutory rule that the statute runs from the time of the act complained of]." *Charters* v. *Citizens Nat'l Bank of Peru* (1925), 84 Ind. App. 15, 19, 145 N.E. 517, 518. The inescapable implication of the Supreme Court's reversal in *Guy* is that the court there contemplated a "fraudulent concealment" which continues to toll the statute *after* the professional relationship terminates.

Defendants assert that proper construction of the fraudulent concealment doctrine cannot be premised upon any inference drawn from the *Guy* court's reversal. The doctors point to the concluding paragraphs of the *Guy* opinion in which the majority attempted to explicitly disclaim any

statement that plaintiff therein had alleged facts sufficient to present a triable case of fraudulent concealment. *See* 236 Ind. at 110-111, 138 N.E.2d at 896. A similar argument carried the day before the Seventh Circuit in *Ostojic* v. *Brueckmann* (7th Cir. 1968), 405 F.2d 302, wherein the court took the language in *Guy*, relied upon here by defendants, at face value, holding that fraudulent concealment always ends when the doctor-patient relationship terminates. The U. S. Court of Appeals discounted the reversal in *Guy* as being based on "the mere possibility that the plaintiff might plead fraudulent concealment in reply." *Ostojic, supra,* 405 F.2d at 305.

It is true that the issue in *Guy* was not whether there were allegations of fraudulent concealment in the complaint, but rather, whether plaintiff therein was entitled to plead and prove such a defense against the statute of limitations. 236 Ind. at 111, 138 N.E.2d at 896. But reversal presupposed that the plaintiff might have been able to plead a case of fraudulent concealment permitting avoidance of the limitations statute—even when the physician-patient relationship terminated *eleven years* before discovery of the cause of action. To interpret *Guy* otherwise is to accuse our Supreme Court of knowingly sponsoring needless waste of litigation expense and judicial time by remanding for further pleadings a complaint which no further pleadings could save. We refuse to so construe *Guy*.

Our analysis is mirrored by *Wolfe* v. *Virusky* (S. D. Ga. 1969), 306 F. Supp. 519, 520-521:

> "Under Georgia law, mere failure of the patient to discover the existing condition or to be aware of his cause of action does not toll the statute.[3] [Citations omitted]. A recognized exception is where because of defendant's moral fraud plaintiff does not learn of the cause of action within the statutory time. Such fraud tolls the statute. [Citations

3. Indiana law is in accord with this general rule, see *Guy* v. *Schuldt, supra,* 236 Ind. at 108, 138 N.E.2d at 895. The fraudulent concealment doctrine discussed in *Guy* is likewise analogous to the "moral fraud" rule noted by the *Wolfe* court.

omitted]. Plaintiff has alleged as much but defendant argues that although the fraud exception may have been initially applicable as soon as the patient-physician relationship terminated the patient was no longer subjected to the doctor's influence and that the statute began to run notwithstanding the fact that the patient did not know or could not have been expected to know of the fraud.

"In support of this proposition defendant cites *Ostojic* v. *Brueckmann,* 405 F.2d 302. There the Court of Appeals for the Seventh Circuit so interpreted the law of Indiana. I do not find other support for this proposition which would theoretically permit a physician to conceal his mistake or fault by explaining to the patient that certain undesirable symptoms could be expected to continue in excess of two years and then by discharging the patient from his care cause the statute to begin running. A patient, accepting the explanation, might then live with his condition for a period beyond the statute and be barred from instituting a malpractice action upon subsequently learning of the fraud.

Under Georgia law, in order for fraud to toll the statute, it must have the effect of deterring a plaintiff from bringing his action,[4] [citations omitted] and to do so must be a continuing fraud. [Citations omitted]. Under the hypothetical situation stated above an initial fraudulent concealment of facts may continue to be effective and may continue to deter the bringing of an action until long after the parties have terminated the physician-patient relation. For this reason I reject the *Ostojic* rule as inapplicable in Georgia, predicting that such is what the courts of this State would do under the circumstances in a like case. The more logical approach in cases where fraud is claimed to toll the statute of limitations is that it commences to run when the patient either learns of the fraudulently concealed fact or in the exercise of diligence should have become aware thereof. [Citations omitted]."

Defendants herein, like the defendant in *Wolfe,* rely on *Ostojic* v. *Brueckmann, supra.* We are not bound by the United States Court of Appeals' interpretation of Indiana law in *Ostojic.* Our Supreme Court has stated that "federal cases interpreting state law are

---

4. *Accord, Guy* v. *Schuldt, supra,* at 107, 138 N.E.2d at 894.

merely persuasive authority in this Court and we do not deem them controlling on questions of Indiana law." *Chaffin* v. *Nicosia, supra,* 310 N.E.2d at 870. We may be and are, therefore, persuaded by the reasoning of the *Wolfe* case.

Even were we to focus solely upon the words of the *Guy* opinion which defendants emphasize, such language must be taken in context. From our reading of the *Guy* opinion, the crucial elements of "fraudulent concealment" are the failure of the patient to discover his cause of action and a showing that such failure resulted from reasonable reliance upon fraudulent representations or fraudulent failure to disclose information by the physician.

We need not here decide whether such reasonable reliance and consequent failure to discover could be premised upon a failure to disclose information more than 2 years after the termination of the physician-patient relationship. Therefore, the distinction drawn in the *Guy* case between failure to disclose, on the one hand, and affirmative or active concealing effort, on the other is not determinative here.

Viewing then, the facts *as alleged* in the complaint before us, we see affirmative and active misconduct on the part of both defendants which concealed a malpractice cause of action from plaintiff.

Without regard to whether the permissible reliance by a patient upon a failure to disclose ceases as a matter of law upon termination of the physician-patient relationship, we hold that such termination of relationship when there has been affirmative misrepresentation as here alleged does not, as a matter of law, commence the clock ticking on the statute of limitations.

The legal consideration then translates into a question of whether, and when, if at all, the patient had a reasonable opportunity to discover his condition, so that reliance upon the representations of his former physicians became un-

reasonable. This is a factual question which may not be resolved upon a TR. 12(B)(6) Motion.

Plaintiff alleges herein that both Taube and Quigley, in a "concerted" and intentional effort to deceive plaintiff, made affirmative misrepresentations as to the true nature of plaintiff's condition. The alleged conspiracy of fraudulent concealment involved affirmative acts on the part of both doctors at least until the end of Quigley's treatment of plaintiff in November of 1963. The doctors' alleged representations that plaintiff's glaucoma was incurable and would inevitably result in total blindness in about ten years are particularly of the nature to mislead plaintiff into avoiding future inquiry. *See Adams* v. *Ison* (1952), Ky. App., 249 S.W.2d 791; *Bowman* v. *McPheeters* (1947), 77 Cal. App. 2d 745, 176 P. 2d. 745; *Colvin* v. *Warren* (1932), 44 Ga. App. 825, 163 S.E. 268. We cannot say that, as a matter of law, plaintiff was not entitled to rely on the identical opinions of *two* doctors. Nor can we say, as a matter of law, that plaintiff acted unreasonably in not going to a *third* doctor after seeing Quigley or otherwise discovering his cause of action before his 1971 examination by Dr. Stephens. In short, the continuing tolling effect of the doctors' misrepresentations turns on the reasonableness of plaintiff's reliance thereon and accompanying failure to inquire further. Such questions are peculiarly questions of fact incapable of resolution by summary proceedings. *See Wolfe* v. *Virusky, supra.*

Our holding does not imply a right of recovery by van Bronckhorst. It merely permits him to present evidence before the trial court which, if believed, would justify a determination that defendants are estopped to plead the statute of limitations as a bar to plaintiff's claim for relief.

We reverse and remand for further proceedings not inconsistent with this opinion.

Buchanan, P.J., and White, J., concur.

NOTE.—Reported at 341 N.E.2d 791.