Connie STEVENS, by her legal guardian
Anna STEVENS, Appellant,
(Petitioner Below),

v.

INDIANA DEPARTMENT OF PUBLIC WELFARE; Indiana State Department of Public Welfare; Suzanne Magnant, in her official capacity as Administrator of the Indiana State Department of Public Welfare, Appellees, (Plaintiff Below).

No. 49A04–9002–CV–98.

Court of Appeals of Indiana,
Fourth District.

Jan. 31, 1991.

Opinion on Denial of Rehearing
April 25, 1991.

Dawn Howell and Kenneth J. Falk, Legal Services Organization of Indiana, Inc., Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen. and Gordon E. White, Jr., Deputy Atty. Gen., Indianapolis, for appellees.

CHEZEM, Judge.

### Case Summary

Appellant/Petitioner, Connie Stevens (Connie), by her legal guardian, Anna Stevens (Anna), appeals the trial court's dismissal of her claim against Appellees/Respondents, Marion County Department of Public Welfare, Indiana State Department of Public Welfare (DPW), and Suzanne Magnant (Appellees), for six thousand six hundred and ninety-one dollars (6,691.00) in nursing home bills. We reverse.

### Issue

Whether the trial court erred in dismissing this action on the grounds it did not present a cause of action.

### Facts

Connie is mentally retarded and Anna is her legal guardian. She is a recipient of Medicaid which pays for her care and treatment. Connie was a resident of North Willow Center, an Intermediate Care Facility for the Mentally Retarded (ICF/MR), until January 7, 1988. Due to injuries she received from other patients at North Willow, Connie was moved to Eagle Valley and then to Country Trace Home, both Intermediate Care Facilities (ICFs).

In June 1988, a Pre–Admissions Multidisciplinary Team (Team) reviewed Connie's placement and concluded that her injuries had healed sufficiently to have her returned to an ICF/MR. However, at this time there was no ICF/MR placement

available. Connie claims the Team told her that her Medicaid benefits to the ICF would terminate on June 30, 1988. Connie remained in the ICF until late November of 1988 when a bed at an ICF/MR opened up. During that time, six thousand six hundred ninety-one dollars ($6,691.00) in nursing home fees accrued. Medicaid refuses to pay for the ICF treatment if it has been determined that the patient should be in an ICF/MR, even if no space is available. However, the nursing home has not demanded payment from Connie or her guardian.

Connie appealed the termination of payments to the nursing home. The denial of benefits was sustained at an administrative hearing by the DPW. On appeal, the State Board of Public Welfare affirmed the decision of the administrative law judge. Connie filed her Petition of Judicial Review/Class Action Complaint for Declaratory and Injunctive Relief on May 5, 1989. The action was brought pursuant to 42 U.S.C.1983 and as a class action pursuant to Indiana Trial Rule 23(B)(2). Connie defined the class as including:

All past, present, and future Indiana recipients of Medicaid who have been or will be denied reimbursement for placement because the placement is deemed to be an inappropriate level of care, even though the appropriate level of care is not available.

Connie's claim asserts the policy denying Medicaid to recipients living in inappropriate levels of care when appropriate levels are not available "violates the Social Security Act, 42 U.S.C. 1396(a), *et seq.* and is irrational, arbitrary and capricious and in violation of the Due Process Clause of the United States Constitution." On November 9, 1989, the trial court granted Appellees' Motion to Dismiss finding that this action did not present a controversy. Connie now appeals.

### Discussion and Decision

Connie correctly states the standard of review for the granting of a motion to dismiss. "[F]or the purpose of considering the motion to dismiss, all facts in the complaint must be taken as true." *Sanders v.*

*Stewart* (1973), 157 Ind.App. 74, 298 N.E.2d 509, 510. "Moreover, every reasonable inference and intendment must be drawn in his favor from the alleged facts." *Van Bronckhorst v. Taube* (1976), 168 Ind. App. 132, 341 N.E.2d 791, 792.

The trial court stated in its entry granting the Motion to Dismiss:

Apparently, as of this time, Medicaid benefits were denied with respect to Plaintiff's stay at an Intermediate Care Facility (ICF); however, Plaintiff has not alleged that she paid any bills for her care at that ICF or that any claim has been made against her with respect to those charges. If the ICF proceeds against Defendants for said charges rather than Plaintiff, then the court cannot see what harm has occurred to Plaintiff. Until some claim has been made with respect to Plaintiff regarding her stay at the ICF, this court believes that said case is premature.

Although the trial court dismissed the action on the grounds it did not present a controversy, Appellees set forth other grounds on which they believe the trial court could have properly dismissed the case even if a controversy existed. These are:

1. Connie failed to join the Department of Health and Human Services (DHHS), an indispensable party.

2. Connie's claims for injunctive and declaratory relief are not appropriate forms of relief at the judicial review process.

3. A class action is not appropriate on the judicial review level.

4. The appellees are not proper defendants for a § 1983 action.

On appellate review the trial court's judgment can be sustained on any theory or basis found in the Record. *Havert v. Caldwell* (1983), Ind., 452 N.E.2d 154. However, no grounds set forth by the Appellees justify dismissal of this case.

■ In considering these issues, we first determine that the DHHS is not an indispensable party. 42 C.F.R. 431.243, entitled

"Parties in cases involving an eligibility determination," states:

> If the hearing involves an issue of eligibility and the Medicaid agency is not responsible for eligibility determinations, the agency that is responsible for determining eligibility must participate in the hearing.

Here, the Medicaid agency was responsible for determining eligibility; thus DHHS was not required to be joined. Appellant's concern that the DHHS will discover that payments have been made contrary to federal mandate and recoup the amount of federal share payments from the state government can be addressed through court order. If the state governing agency is acting on a court order, the DHHS cannot recoup. Also, Connie is not contesting the Federal Medicaid program; she is contesting the DPW's policy which terminates a person from the Medicaid Program for being in an inappropriate placement when an appropriate placement is not available. Finally, the remedy for non-joinder is not dismissal. *See* T.R. 19(A) and T.R. 21(A).

■ The Appellees next assert that injunctive and declaratory relief are not appropriate forms of relief in a judicial review of an administrative act. This assertion is misplaced. The § 1983 action brought by Connie seeking injunctive and declaratory relief was brought as a separate claim from the judicial review claim. Appellees cite *New Trend Beauty School v. Indiana State Board of Culturist Examiners* (1988), Ind.App., 518 N.E.2d 1101, to assert that Connie's claims, although partially brought under § 1983, are limited by the Administrative Adjudication Act (AAA) which contains no provision for an award of injunctive and declaratory relief. We disagree. *New Trend* is factually distinguishable from the present case. In *New Trend,* plaintiff had not yet exhausted her administrative remedies as Connie has here. Upon exhaustion of those remedies, the plaintiff still had the right to come back and file a new claim under § 1983 and join it with her review of the administrative decision. *See* Ind. Trial Rule 18(A). Failure of one claim does not exhaust the other. However, as under *New Trend,* you cannot join one claim to the other when one of the claims has not completed the administrative adjudication process. We see no reason that Connie could not bring a separate claim under § 1983.[1] This discussion is also dispositive of the Appellees' assertion that a class action is not appropriate when requesting judicial review because she raised it as a new claim with the review of her administrative hearing. A class action cannot be brought under the AAA, but here, Connie is bringing it in as part of her § 1983 claim.

■ Appellees lastly assert that they are not proper defendants for a § 1983 action because Connie has not shown that they have violated the U.S. Constitution or federal law, and neither the Marion County Department of Welfare nor Suzanne Magnant are "persons" as defined in § 1983. Connie does not have to show a violation of the Constitution or federal law; she must simply assert it and the trier of fact will determine any violation. Connie has challenged the Appellees' application of a federal law, 42 U.S.C. § 1396a *et seq.,* with ample specificity. T.R. 8(A)(1) calls for a short and plain statement of the claim showing that the pleader is entitled to relief, with which Connie has complied. Also, we believe that Suzanne Magnant is a "person" under § 1983. We agree with Connie's assertion that, although in a damage case a state official or the state itself cannot be considered "persons" under § 1983 *(See Will v. Michigan Department of State Police* (1989), 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45), a state official when sued for injunctive relief in his or her official capacity, is a "person" under § 1983.

> Since the city is not a 'person' within the meaning of § 1983, (citations omitted) this court is without jurisdiction to assess damages under § 1983 against the

---

1. Because we decide the issue by factually distinguishing *New Trend,* we need not reach the assertion raised by Connie that *Werblo v. Hamilton Heights School Corp.* (1989), Ind., 537

N.E.2d 499 overrules *New Trend* by relying on *Felder v. Casey* (1988), 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123.

defendants in their official capacities which are intended to be satisfied out of the public treasury and this claim will be dismissed. A different case results with respect to the injunctive relief sought against all five defendants in their official capacities. Under the doctrine of *Ex Parte Young*, 209 US 123, 159, 28 S.Ct. 441, [453] 52 L.Ed. 714 (1908), when an official acts in an unconstitutional manner, his actions are stripped of their official cloak, and he may be ordered to perform his official duties in a manner consonant with the Constitution. Under this legal fiction, the state is presumed not to accede to unlawful actions taken by one of its officials, so that an order directed to the official to affirmatively correct his actions is not being directed against the state. It has consistently been held since *Ex Parte Young*, supra that suits may be brought against public officials to enjoin them from invading constitutional rights. *Griffin v. County School Board*, 377 US 218, 228, 84 S.Ct. 1226, [1231] 12 L.Ed.2d 256 (1964); *see Georgia R.R. & Banking Co. v. Redwine*, 342 U.S. 299, 304, 72 S.Ct. 321 [324] 96 L.Ed. 335 (1952). *O'Brien v. Galloway* (D.Del.1973), 362 F.Supp. 901, 905.

■ With respect to the central issue in this case, Connie contends that a cause of action exists because she has complied with the procedural requirements of the Administrative Adjudication Act (AAA), Ind.Code 4–21.5–5–1 *et seq.*, and within its strict time limits. If she had not complied with AAA time restrictions and had waited to be billed for the services before contesting the charges, she would no longer have an avenue for relief.[2] Also, Connie asserts the case is not moot because she has been injured by the Appellees' act terminating her Medicaid benefits, making her liable for the debt owed to the nursing home. Connie claims that this is a demonstrable injury making her claim actionable under the law.

The courts have clearly determined that a controversy must be established before a case can be tried. "A court also should not decide an issue when there is no cause or controversy before it, since any judgment decided thereon would be advisory and not dispositive of anything." *Indiana Bureau of Motor Vehicles v. Zimmerman* (1985), Ind., 476 N.E.2d 114, 118. If Connie could not show harm and therefore no controversy, to decide her cause and the class action question she raised would be to decide an issue not specifically before the court. This district has stated:

> Absent a case or controversy, courts are without jurisdiction to proceed. *Calhoun [v. Jennings] Id.*, 512 N.E.2d [178] at 182 [Ind.1987]; *City of Indianapolis v. Indiana State Board of Tax Commissioners* (1974), 261 In. 635, 308 N.E.2d 868, 869–70. Courts have no power to determine questions of law without proper complaints before them. 'Standing' is a restraint upon a court's exercise of its jurisdiction, in that it cannot proceed where there is no demonstrable injury to the complainants before it. *Calhoun and City of Indianapolis, Id.*

*Gossett v. Auburn Nat. Bank of Auburn* (1987), Ind.App., 514 N.E.2d 309, 313.

Connie asserts that in finding no controversy, the trial court relied on certain regulations presented by the Appellees, and that such reliance was misplaced. The court interpreted these regulations to find that she was not liable for the bills. They are as follows:

> Acceptance of State Payment as payment in full.
>
> A state plan must provide that the Medicaid agency must limit participation in the Medicaid program to providers who accept, as payment in full, the amounts paid by the agency plus any deductible, co-insurance or co-payment required by the plan to be paid by the individual. However, the provider may not deny services to any eligible individual on account of the individual's inability

---

**2.** IC 4–21.5–5–5 Time for filing.
  § 5. Except as otherwise provided, a petition for judicial review is timely only if it is filed within thirty (30) days after the date that notice of the agency action that is the subject of the petition for judicial review was served.

to pay the cost sharing amount imposed by the plan in accordance with 431.55(g) or 447.53. The previous sentence does not apply to an individual who is able to pay. An individual's inability to pay does not eliminate his or her liability for the cost sharing charge.

42 C.F.R. 447.15.

(i) A Medicaid provider shall not collect from a Medicaid recipient or from the family of the Medicaid recipient any portion of his charge for a Medicaid covered service which is not reimbursed by the Indiana Medicaid program, except for co-payment and any patient liability payment as authorized by law. (*See* 42 C.F.R. 447.15)

470 I.A.C. 5–1–3(i).

Connie does not dispute that a Medicaid provider may not bill a recipient for covered services; however, she asserts that the services she received after June 30, 1988 were *not* covered services. Connie cites:

Covered Services. Medicaid reimbursement is available for services provided by a licensed and certified skilled nursing or intermediate care facility in accordance with 470 IAC 5–4.1 when rendered to a Medicaid recipient whose level of care has been approved by the department....

470 IAC 5–8–18(a). The services to Connie were not covered by Medicaid because she was not in an approved level of care facility; therefore, Connie believes she is liable for the services provided.

Appellees assert that the decision of DPW not to pay for the Country Trace bills does not mean that Connie and her guardian become liable. They assert that Country Trace is the entity responsible for Connie's stay at an inappropriate level of care, and that there is nothing supporting the idea that Country Trace had any interest in trying to obtain the payment from Connie or her guardian. They rely on 42 C.F.R. 447.15 and 470 IAC 5–1–3(g) *supra*, to argue that Country Trace was aware Connie's placement was temporary, and Country Trace, not Connie, were at risk if she could not be placed properly. These are assumptions, however, that may be unfounded. It is not Country Trace's responsibility to assure that Connie and people like her are placed in appropriate levels of care. It is the responsibility of the DPW to find adequate facilities for people within its programs. The legislature has directed the DPW to ensure proper treatment for the Connie Stevenses' of Indiana. Connie fits into the definition of a developmentally disabled person under IC 16–13–1–3(4), and as such, she is to have her care responsibly administered by the DPW. IC 16–13–1–14(1).[3] Appropriate facilities for people such as Connie are to be provided, and enough of the proper facilities must exist to adequately treat them. It is the responsibility of the state to provide for the costs incurred because an agency has not complied with the legislature's directive.

■ Appellees also contend that Connie's argument regarding "covered services" is misplaced. They argue that the term "covered service" is not recipient specific and that Country Trace was providing a "covered service." The DPW would not pay the nursing home for its services because the Country Trace had Connie at an inappropriate level of care—not because the services provided were not "covered services." We do not agree. The very definition of "covered services" requires that the recipient be in a level of care approved by the department.

Connie also asserts that the notice she received from the DPW telling her that she would no longer be covered at Country Trace warned, "You may not remain in the nursing home without being subject to po-

---

**3.** 16–13–1–14(1) **Responsibility for programs and services for the developmentally disabled.** —(a) The department is responsible for planning, research and the development of developmental service directed toward the prevention and alleviation of developmental disabilities or toward the social, personal, physical or economic habilitation or rehabilitation of an individual with such a disability; for the coordination of the various governmental services, activities, and programs in the state relating to the developmentally disabled; for administering the institutional services, under the supervision of the commissioner of mental health, provided in the state hospitals and training centers for the developmentally disabled.

tential future penalty concerning payment of per diem in the nursing home." (Record at 59). Connie further points out that even though no billing has been sent to her, she is still liable for the amount owing under common law standards. She states that she received the value of the nursing home service for four months without payment, giving the nursing home the right to recover the reasonable value of the services under a *quantum meruit* theory; she cites in support *U.S. Controls Corp. v. Windle* (7th Cir.1975), 509 F.2d 909, with which we agree. Someone is going to have to pay for the services rendered to Connie. It is a decision best left for the trial court as to who will pay for the services rendered to Connie. There is a controversy to be decided here.

We reverse and remand for proceedings consistent with this opinion.

MILLER, P.J., and GARRARD, J., concur.

CHEZEM, J.

## ON PETITION FOR REHEARING

Appellees/Respondents/Petitioners, Marion County Department of Public Welfare; Indiana State Department of Public Welfare; and Suzanne Magnet (Petitioners), petition this court for rehearing on several issues. We find that all the issues were settled by our majority opinion. However, we desire to further clarify one issue raised. Petitioners assert that we erroneously decided a new question of law by holding that Ind.Code § 16–13–1–14.1 creates an obligation on the Indiana Department of Public Welfare (IDPW) to provide appropriate facilities for people such as Connie Stevens. Petitioners assert this statute concerns the Indiana Department of Mental Health (IDMH) and has no impact at all on the IDPW or the Medicaid program. We write only to acknowledge error in not stating that IDMH shared that obligation along with IDPW. The point to be made, however, is that the legislature has set out the state's responsibility for caring for people such as Connie. While the IDMH screens these types of patients for placement, it is the IDPW that funds the patient's placement. Therefore, both departments must work together to fulfill their legislative mandate to care for the disabled.

Rehearing denied.

MILLER and GARRARD, JJ., concur.