**Marie BANKS, individually and as a representative of a class of similarly situated persons, Plaintiff–Appellant,**

and

**Joan J. Smith, Intervenor–Appellant,**

v.

**SECRETARY OF The INDIANA FAMILY AND SOCIAL SERVICES ADMINISTRATION, in the Secretary's official capacity, and Secretary of the United States Department of Health and Human Services,\* in her official capacity, Defendants–Appellees.**

No. 92–2299.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 10, 1992.

Decided June 15, 1993.

---

\* Donna E. Shalala is substituted for her predecessor, Louis W. Sullivan, as Secretary of Health and Human Services. Fed.R.App.P. 43(c)(1).

234

Kent Hull, argued, Legal Services of Northern Indiana, South Bend, IN, for Marie Banks and Joan Smith.

Wendy S. Messer (argued), Office of the Attorney General, Federal Litigation, Indianapolis, IN, for Secretary of the Indiana Family and Social Services Administration.

Barbara F. Altman, Dept. of Health and Human Services, Region V, Office of the General Counsel, Chicago, IL, for Secretary of the Dept. of Health and Human Services.

Before KANNE and ROVNER, Circuit Judges, and REYNOLDS, Senior District Judge.**

KANNE, Circuit Judge.

The plaintiffs, appellants in this appeal, sued the Secretary of the United States Department of Health and Human Services and the Secretary of the Indiana Family and Social Services Administration in district court, alleging violations of rights secured by the federal Medicaid regulations and constitutional due process. Specifically, the complaint charged that Indiana's Medicaid agency had failed to give notice and an administrative hearing to Medicaid recipients whose health care providers' claims for reimbursement were denied by the state. Ruling on the defendants' motions to dismiss, the district court held that the plaintiffs lacked standing to sue the federal Secretary and had failed to state a legally cognizable claim against the state Secretary. We conclude that the plaintiffs have standing to sue the federal Secretary, but affirm the district court's decision because the plaintiffs have failed to state a viable claim against either defendant.

I.

The Medicaid program, codified as Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.* (1985), provides federal financial assistance to states that pay for medical treatment of needy individuals. Participation in the program is voluntary, but participating states must comply with certain requirements imposed by the Medicaid Act and regulations promulgated by the Secretary of the United States Department of Health and Human Services. *Wilder v. Virginia Hospital Association*, 496 U.S. 498, 502, 110 S.Ct. 2510, 2513, 110 L.Ed.2d 455 (1990). *See also Smith v. Miller*, 665 F.2d 172, 175 (7th Cir.1981).

To qualify for federal assistance, a state must submit to the Secretary and have approved "a plan for medical assistance" that

** The Honorable John W. Reynolds, Senior District Judge for the Eastern District of Wisconsin, is sitting by designation.

meets the requirements of the Medicaid Act and the Secretary's regulations. 42 U.S.C. §§ 1316, 1396a(b). A state seeking plan approval must establish or designate a single state agency to administer the plan. 42 U.S.C. § 1396a(a)(5). In addition, the plan must establish a scheme for reimbursing health care providers for the medical services provided to needy individuals, and must require that payment for Medicaid services be made only to the provider of the services or, under certain conditions, to the recipient of the services. *See id.* § 1396a(a)(13)(A); 42 C.F.R. § 447.10(d).

Once a state has secured approval of its plan from the Secretary, the state is entitled to federal reimbursement for a portion of the costs of administering a Medicaid program, and for a portion of payments to health care providers. 42 U.S.C. § 1396b(a). In order to receive reimbursement, a provider of Medicaid services must enter into a "provider agreement" with the single state agency. *Id.* § 1396a(a)(27). That agreement is contingent upon certification by an appropriate state health or medical agency that the facility in question meets federal standards. *Id.* § 1396a(a)(9).

Indiana participates in the Medicaid program under an approved state plan. The program was formerly administered by the Indiana Department of Public Welfare, and is currently under the direction of the Office of the Secretary of Family and Social Services Administration. Ind.Code Ann. § 12-6-2-2 (West Supp.1991).[1]

## II.

Arthur Banks was a Medicaid recipient who received medical treatment from Radiology, Inc., before his death. Radiology submitted a Medicaid claim to the Indiana Department of Public Welfare, which refused reimbursement because Radiology had not submitted the proper forms. Following Banks's death, Radiology sued Arthur's widow, Marie, in small claims court for payment of her husband's medical bills. The court entered judgement for Radiology.

Mrs. Banks subsequently filed suit in federal district court against the Secretary of the Indiana Family and Social Services Administration ("Indiana Medicaid") and the Secretary of the United States Department of Health and Human Services. Mrs. Banks brought the action on behalf of a putative class of Medicaid recipients and persons "legally responsible" for their debts. The complaint charged that Indiana Medicaid improperly failed to provide her with both timely written notice of its denial of Radiology's claim and an opportunity to contest the denial. Such nonfeasance, according to Mrs. Banks, violated her rights under federal statutes and regulations, and the Due Process and Equal Protection Clauses of the Fourteenth Amendment. Moreover, to the extent that Indiana's administrative code did not require notice and a hearing, Mrs. Banks insisted it ran afoul of federal law.

The federal defendant, Mrs. Banks contended, violated the same federal statutes and regulations, as well as the Due Process Clause of the Fifth Amendment, by failing to require the state defendant to provide the above procedural protections. As relief, Mrs. Banks requested that the district court issue a writ of mandamus or mandatory injunction to the Secretary of Health and Human Services, directing her to properly supervise the state defendant to insure compliance with state and federal law.

Joan Smith was hospitalized in St. Joseph's Medical Center, South Bend, Indiana. Although not eligible for Medicaid at the time of her admission to the hospital, she was retroactively approved for coverage. Without giving any form of notice to Mrs. Smith, the Department of Public Welfare refused St. Joseph's claim for payment because the bill was not timely filed. In due course, the matter found its way into the hands of Midwest Collection Service, Inc., which sued Mrs. Smith and her husband in state court on the unpaid bill. Prior to the suit, in response to collection demands, Mrs. Smith paid approximately $150. She then sought to

---

1. Indiana amended and recodified its Medicaid scheme, effective February 14, 1992. *See* Ind. Code Ann. §§ 12-8-1-1 *et seq.,* 12-15-1-1 *et seq.*

(West Supp.1992). This opinion refers to code sections in effect at the time the complaint was filed in this case.

intervene as a party plaintiff in the suit filed by Mrs. Banks.

While this action was pending in the district court, Indiana Medicaid paid Radiology for services provided to Arthur Banks. As a result, Radiology's judgement against Mrs. Banks was vacated and the case dismissed with prejudice. Likewise, while Mrs. Smith's motion to intervene was pending (and obviously due to Indiana Medicaid's intercession), the state court dismissed, without prejudice, Midwest Collection Service's suit against her. Sometime later, St. Joseph's Medical Center sent Mrs. Smith a check in the amount of $165 as a refund of payments previously made.

The federal defendant moved to dismiss the complaint both for lack of subject matter jurisdiction, Fed.R.Civ.P. 12(b)(1), and failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6). The state defendant answered the complaint and moved to dismiss for mootness and failure to state a claim upon which relief can be granted. Plaintiff Banks filed her response to both motions and moved for conditional class certification pursuant to Fed.R.Civ.P. 23. On April 2, 1992, the district court issued a memorandum opinion and order granting Mrs. Smith's motion to intervene, denying Mrs. Banks's motion for conditional class certification, granting the federal defendant's motion challenging subject matter jurisdic-

tion, and granting the state defendant's motion under Rule 12(b)(6). *Banks v. Secretary of Indiana Family and Social Services Administration*, 790 F.Supp. 1427, 1440–41 (N.D.Ind.1992).[2] The plaintiffs filed a timely appeal. For the purpose of clarity, we address first the claims brought against the Secretary of Health and Human Services under the Medicaid Act and its implementing regulations. We then turn to the constitutional due process claims brought against both the Secretary and the state Medicaid agency.

### III.

The complaint avers that the federal defendant violated regulations promulgated pursuant to the Medicaid Act, as well as the Due Process Clause of the Fifth Amendment, by failing to require Indiana Medicaid to give the plaintiffs timely notice of its denial of their providers' claims for reimbursement as well as the opportunity for an administrative hearing in which to contest the denial. The Secretary of Health and Human Services filed a motion to dismiss based on Rules 12(b)(1) and 12(b)(6). The Rule 12(b)(1) jurisdictional defense asserted that the plaintiffs lacked Article III standing to sue the Secretary and had failed as well to invoke mandamus jurisdiction. The district court agreed and granted the motion.[3]

---

**2.** The state defendant, in its motion to dismiss, and the federal defendant, in its reply memorandum in support of its motion to dismiss, argued that Mrs. Banks's claims were moot. In denying Mrs. Banks's motion for conditional class certification, the district court found, as an initial matter, that Mrs. Banks "ha[d] the better" of the mootness argument. *Banks*, 790 F.Supp. at 1432. Relying principally on *Deposit Guaranty v. Roper*, 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980); *Susman v. Lincoln American Corporation*, 587 F.2d 866 (7th Cir.1978), *cert. denied*, 445 U.S. 942, 100 S.Ct. 1336, 63 L.Ed.2d 775 (1980); and *Griffith v. Bowen*, 678 F.Supp. 942 (D.Mass.1988), the court credited Mrs. Banks's claim that she had not obtained all the relief she had sought in bringing the suit and noted that she had diligently pursued class certification. *Banks*, 790 F.Supp. at 1430–31. Alternatively, the district court found that even if Mrs. Banks's claims were moot, Mrs. Smith's claims, which were not challenged on this ground, placed her in a position to serve adequately as a class representative. *Id.* at 1432.

Although the plaintiffs appeal the denial of conditional class certification, neither defendant has briefed the issue of mootness in this court, and we find no basis for disturbing the district court's determination that the plaintiffs' claims are not moot. *Cf. South East Lake View Neighbors v. Department of Housing and Urban Development*, 685 F.2d 1027, 1039 n. 9 (7th Cir.1982) (analyzing case under standing principles rather than mootness doctrine because standing was basis of district court's decision, the parties adopted that approach in their briefs, and because *United States Parole Commission v. Geraghty*, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980), indicates analysis under the two doctrines would be identical).

**3.** The district court added that "had the court not granted the federal defendant's Rule 12(b)(1) motion, it would grant the federal defendant's Rule 12(b)(6) motion." *Banks*, 790 F.Supp. at 1440 n. 5.

This court has jurisdiction over this appeal because dismissal of an action for lack of subject matter jurisdiction is a final judgement. 28 U.S.C. § 1291 (1986). We review *de novo* the district court's determination on standing, *Love Church v. City of Evanston,* 896 F.2d 1082, 1085 (7th Cir.), *cert. denied,* 498 U.S. 898, 111 S.Ct. 252, 112 L.Ed.2d 210 (1990), accepting as true all material allegations of the complaint and construing the complaint in favor of the complaining party. *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). *See also Lujan v. National Wildlife Federation,* 497 U.S. 871, 889, 110 S.Ct. 3177, 3189, 111 L.Ed.2d 695 (1990) (on a motion to dismiss, the court presumes that general factual allegations embrace those specific facts necessary to support the claim).

The plaintiffs asserted multiple grounds for jurisdiction in the district court, two of which concern us here. First, the plaintiffs rely on 28 U.S.C. § 1331, the general federal question statute, and we conclude that their claim against the Secretary is one that arises under the Medicaid Act. For purposes of statutory "arising under" jurisdiction,

> [a]n action arises under the laws of the United States if and only if the complaint seeks a remedy expressly granted by a federal law or if it requires the construction of a federal statute or a distinctive policy of a federal statute requires the application of federal legal principles for its disposition.

*Lindy v. Lynn,* 501 F.2d 1367, 1369 (3d Cir.1974). *See also Franchise Tax Board of the State of California v. Construction Laborers Vacation Trust for Southern California,* 463 U.S. 1, 27–28, 103 S.Ct. 2841, 2856, 77 L.Ed.2d 420 (1983) (a district court's federal question jurisdiction extends to those cases in which a well-pleaded complaint establishes that plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal law). Alternatively, the plaintiffs rely on 28 U.S.C. § 1361, mandamus against a federal official.

*Standing*

The district court held that the plaintiffs lacked Article III standing to sue the Secretary of Health and Human Services. The concept of standing derives from the Understanding, fundamental to our law, that "[f]ederal courts are not courts of general jurisdiction; they have only the power that is not authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area School District,* 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986). *See also Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). Because the jurisdiction of federal courts is defined and limited, in the words of Article III, to actual "Cases" and "Controversies," *Whitmore v. Arkansas,* 495 U.S. 149, 154–55, 110 S.Ct. 1717, 1722, 109 L.Ed.2d 135 (1990); *Flast v. Coehn,* 392 U.S. 83, 94, 88 S.Ct. 1942, 1949, 20 L.Ed.2d 947 (1968), the Supreme Court has long recognized the federal judicial power exists only to redress an injury to the complaining party. *Warth,* 422 U.S. at 499, 95 S.Ct. at 2205. Thus, the principle that "[t]he province of the court is, solely, to decide on the rights of individuals" is no less vital today then when announced by Chief Justice Marshall in *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 170, 2 L.Ed. 60 (1803).

Rooted in the concern for "the proper—and properly limited—role of the courts in a democratic society," *Warth,* 422 U.S. at 498, 95 S.Ct. at 2205, the standing doctrine serves to identify those disputes that are appropriately resolved through the judicial process. *Whitmore,* 495 U.S. at 154–55, 110 S.Ct. at 1722–23. The "gist of the question of standing" is whether the party seeking relief has "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult ... questions." *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). When standing is an issue, therefore, we ask whether the party " 'whose standing is challenged is a proper party to request an adjudication of a particular issue' and not whether the controversy is otherwise judiciable, or wheth-

er, on the merits, the plaintiff has a legally protected interest that the defendant's action invaded." *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 171, 90 S.Ct. 827, 840, 25 L.Ed.2d 184 (1970), and *Barlow v. Collins*, 397 U.S. 159, 171, 90 S.Ct. 832, 840, 25 L.Ed.2d 192 (1970) (Brennan, J., concurring and dissenting) (quoting *Flast*, 392 U.S. at 99–100, 88 S.Ct. at 1952–53) (footnote omitted). *See also Warth*, 422 U.S. at 498–500, 95 S.Ct. at 2205–06; *Frank Rosenberg, Inc. v. Tazewell County*, 882 F.2d 1165, 1168 (7th Cir.1989), *cert. denied*, 493 U.S. 1023, 110 S.Ct. 726, 107 L.Ed.2d 745 (1990).

At an irreducible constitutional minimum, standing contains three elements that must be established by the party invoking federal jurisdiction:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally-protected interest which is (a) concrete and particularized and (b) "actual and imminent, not 'conjectural or hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defenders of Wildlife*, —— U.S. ——, ——, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (alterations in original) (citations

omitted).[4] The district court held that plaintiffs Banks and Smith had not satisfied the second and third elements of the standing inquiry. *Banks*, 790 F.Supp. at 1437. Because standing is not a concept that can be defined by strict metes and bounds, and is not susceptible to facile application, it often lends itself to a "close call" by the court. This is such a case. Even so, guided primarily by the Supreme Court's discussion in *Lujan v. Defenders of Wildlife*, decided after the district court's memorandum and order issued, we find that the plaintiffs have standing to bring their claim against the Secretary of Health and Human Services.

The plaintiffs allege that the Secretary violated their rights to receive Medicaid benefits by failing to enforce federal regulations that, the plaintiffs assert, require the state agency to provide a recipient with notice and an opportunity to contest a state Medicaid agency's denial of a provider's claim for reimbursement. *Lujan* recognizes that an individual may enforce procedural rights "so long as the procedures in question are designed to protect some threatened concrete interest of his that is the ultimate basis of his standing." —— U.S. at —— n. 8, 112 S.Ct. at 2143 n. 8.[5]

As an eligible recipient, Joan Smith had a concrete interest in Medicaid benefits. As one secondarily liable for her husband's medical bills, Marie Banks also had a sufficiently concrete interest in benefits.[6] Being billed for services rendered under Medicaid, and being sued on the bill, threatened to deprive each plaintiff of her interest. Absent notifi-

---

**4.** In addition to the constitutional requirements of Article III, the Supreme Court has developed several prudential limitations on standing. *See Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472–75, 102 S.Ct. 752, 758–60, 70 L.Ed.2d 700 (1982).

**5.** According to the Court:
There is much truth to the assertion that "procedural rights" are special: The person who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy [of the injury]. Thus, under our case-law, one living adjacent to the site for proposed construction of a federally licensed dam has standing to challenge the licensing agency's failure to prepare an Envi-

ronmental Impact Statement, even though he cannot establish with any certainty that the Statement will cause the license to be withheld or altered, and even though the dam will not be completed for many years.
*Lujan*, —— U.S. at —— n. 7, 112 S.Ct. at 2142 n. 7.

**6.** Apparently, Marie Banks was eligible for Medicaid during the proceedings in the district court. *Banks*, 790 F.Supp. at 1432. The complaint can fairly be read to allege that the federal and state defendants violated *Mrs. Banks's* right to Medicaid benefits. However, because Mrs. Banks has been neither billed nor sued by a provider for Medicaid services rendered to her, she can show no injury in fact to her interests.

cation of Indiana Medicaid's refusal to pay Radiology and St. Joseph's hospital, both plaintiffs remained ignorant of whether or not they could be held liable for the medical bills. As a result, they were unaware of possible legal defenses when they were hauled into court. Insofar, then, as the plaintiffs are seeking to enforce an alleged procedural requirement of notice guaranteed by either the Medicaid regulations or the Due Process Clause of the Fifth Amendment, the disregard of which "could impair [their] separate concrete interest" in Medicaid benefits, *Lujan*, —— U.S. at ——, 112 S.Ct. at 2142, they have alleged an injury cognizable under Article III.

The plaintiffs' allegations of a particularized injury to a concrete interest take this case out of that line of precedent in which the Supreme Court has consistently held that
> a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy.

*Id.* at ——, 112 S.Ct. at 2143. *See, e.g., Whitmore*, 495 U.S. at 160, 110 S.Ct. at 1725; *Allen*, 468 U.S. at 754, 104 S.Ct. at 3326; *Valley Forge Christian College*, 454 U.S. at 483, 102 S.Ct. at 764; *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 217, 220, 94 S.Ct. 2925, 2930, 2932, 41 L.Ed.2d 706 (1974); *United States v. Richardson*, 418 U.S. 166, 171, 176–77, 94 S.Ct. 2940, 2944, 2946, 41 L.Ed.2d 678 (1974); *Doremus v. Board of Education of Hawthorne*, 342 U.S. 429, 433–34, 72 S.Ct. 394, 396–97, 96 L.Ed. 475 (1952); *Frothingham v. Mellon*, 262 U.S. 447, 488–89, 43 S.Ct. 597, 601, 67 L.Ed. 1078 (1923); *Fairchild v. Hughes*, 258 U.S. 126, 129–30, 42 S.Ct. 274, 275, 66 L.Ed. 499 (1922).

However, in order to have standing, the plaintiffs must also establish a "'fairly traceable' causal connection between the claimed injury and the challenged conduct" of the defendant. *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 72, 98 S.Ct. 2620, 2630, 57 L.Ed.2d

595 (1978) (quoting *Village of Arlington Heights v. Metropolitan Housing Development Corporation*, 429 U.S. 252, 261, 97 S.Ct. 555, 561, 50 L.Ed.2d 450 (1977)). Although standing is not necessarily lost because of the weakness of the causal connection, *Warth*, 422 U.S. at 505, 95 S.Ct. at 2208, a nexus sufficiently strong between the plaintiffs' injury and the defendant's putatively illegal conduct must be present to assure this court that granting relief will personally benefit the plaintiffs. *Duke Power*, 438 U.S. at 74, 98 S.Ct. at 2630. *See also South East Lake View Neighbors*, 685 F.2d at 1036.

In *Lujan*, the Supreme Court addressed the difficulty of demonstrating standing in contexts where the government regulates the conduct of third parties:
> When the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred ... in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue. If he is, there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it. When, however, ... a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*, much more is needed. In that circumstance, causation and redressability [of the injury] ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction—and perhaps on the response of others as well. The existence of one or more of the essential elements of standing "depends on the unfettered choices made by independent actors not before the court and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict," and it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury.

—— U.S. at ——, 112 S.Ct. at 2137 (citations omitted).

The plaintiffs allege that the Secretary has failed to properly enforce due process regulations implemented pursuant to the Medicaid Act against Indiana Medicaid. Indeed, the complaint may also be understood to claim that the Secretary approved Indiana's Medicaid plan despite the absence of a requirement that recipients receive notice and a hearing when their providers' claims are denied by the state.[7] The Secretary responds that federal law does not mandate these procedural protections and, consequently, she need not require states participating in the Medicaid program to provide them.

For the purposes of our standing inquiry, we conclude that the plaintiffs have established that their injury arises from the government's allegedly unlawful lack of regulation of someone else. *See id.* Under the Medicaid Act, the Secretary of Health and Human Services is charged with approving only those state Medicaid plans that conform to federal law. 42 U.S.C. § 1396a(a), (b). One of the requirements of federal law is that state plans "provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness." 42 U.S.C. § 1396a(a)(3).

Pursuant to this provision, the Secretary promulgated the Medicaid due process regulations found at 42 C.F.R. § 431.200 *et seq.* (1991). These regulations, according to the plaintiffs, require states to provide the hearing and notice they seek. Putting to one side, as we must in a standing inquiry, the merits of the plaintiffs' contention, we find that Joan Smith, as an intended beneficiary of these regulations, has adequately demonstrated that she was adversely affected by the Secretary's alleged failure to require state compliance with the regulations and, as

a result, with the requirements of the Medicaid Act. *See Lujan,* —— U.S. at ——, 112 S.Ct. at 2137. As Arthur's survivor, Marie Banks qualifies as a beneficiary of the regulations and has shown that she was similarly adversely affected. For these reasons, the plaintiffs have established a sufficient causal connection between a perceptible injury to their interests and the challenged conduct of the federal defendant.

Concerning the issue of redressability, we do not agree with the Secretary's argument that the actions of Medicaid providers, when they sue Medicaid recipients (or resort to using collection agencies), are all but beyond her statutory control. The Medicaid program is a cooperative federal-state endeavor, and the Act's provisions demonstrate that, insofar as the Secretary works in conjunction with a participating state to provide medical services to the needy, she has "more than a passive role in handing out money to the states." *Estate of Smith v. Heckler,* 747 F.2d 583, 589 (10th Cir.1984).

Consequently, a state agency's implementation of Medicaid due process protections for recipients is not a matter beyond federal recourse. Under 42 U.S.C. § 1396a(c), the Secretary possesses the authority to withhold or limit federal contributions to a state whose plan is not in compliance with the requirements of the Medicaid Act or that fails to administer an approved plan in accordance with the Act. And "[t]he Secretary has expressed [her] intention to withhold funds if the state plan does not comply with the [Medicaid] statute or if there is 'noncompliance in practice.'" *Wilder,* 496 U.S. at 512, 110 S.Ct. at 2519 (citing 42 C.F.R. § 430.35). The burden of enforcing the substantive provisions of the Medicaid Act does not fall solely on the states.[8]

---

7. The plaintiffs' sole claim against the Secretary, cast in the most general of terms, alleges:
 The Federal Defendant has violated the statutes and rules cited in the previous claims [against the state defendant], as well as the due process clause of the Fifth Amendment to the Constitution, in that [s]he has failed to require the State Defendant to comply with the legal provisions set forth.

8. For example, under 42 U.S.C. § 1396a(a)(33)(B), the so-called "look behind"

provision of the Medicaid Act, the Secretary has the authority to verify a state's determination that skilled nursing and intermediate care facilities are complying with the conditions of participation in the Medicaid program under an approved plan and to make "independent and binding determinations concerning the extent to which individual institutions and agencies meet the requirements for participation." 42 U.S.C. § 1396i(c)(1) authorizes the Secretary to cancel a skilled nursing or intermediate care facility's

We are satisfied, then, not only that the plaintiffs have sufficiently alleged the standing elements of injury and causation, but that the injury is "likely to be redressed by the requested relief." *Allen,* 468 U.S. at 751, 104 S.Ct. at 3324. The Secretary's argument that it lacks adequate means to insure a state's compliance with the Medicaid Act or the Secretary's own regulations is not persuasive. State Medicaid agencies do not operate in an area of unfettered choice; they are bound by regulations promulgated by the Secretary. As the federal defendant has not contended to the contrary, we may presume that she, as well as Indiana Medicaid, would abide by this court's authoritative construction of the Medicaid regulations. *See Franklin v. Massachusetts,* —— U.S. ——, ——, 112 S.Ct. 2767, 2777, 120 L.Ed.2d 636 (1992). *See also Lujan,* —— U.S. at ——, 112 S.Ct. at 2149 (Stevens, J., concurring).

Our confidence in this conclusion derives from the fact that this case does not involve the problem of redressability present in *Lujan.* There, the challenged regulation promulgated by the Secretary of the Interior required federal agencies to consult with the Secretary to insure that actions taken by the agencies would not threaten endangered species. —— U.S. at ——, 112 S.Ct. at 2135. Noting that the agencies ostensibly affected by the challenged regulation denied the Secretary's authority to bind them and, more importantly, were not parties to the suit, the Supreme Court concluded that "there is no reason they should be obliged to honor an incidental legal determination [i.e., that they are bound by the Secretary's views] the suit produced." —— U.S. at ——, 112 S.Ct. at 2140–41.[9] Indiana Medicaid is bound by the federal Medicaid regulations and is before the court; we perceive no obstacle to redressability in this case.

Although the plaintiffs' claim against the federal defendant satisfies the irreducible minima of Article III, our inquiry into their standing is not over. Because the plaintiffs are contesting the actions of a federal administrative agency, the question of standing is controlled not only by Article III, but by § 10 of the Administrative Procedure Act, 5 U.S.C. § 702 (APA).[10] *City of Milwaukee v. Block,* 823 F.2d 1158, 1164 (7th Cir.1987), *cert. denied,* 493 U.S. 976, 110 S.Ct. 500, 107 L.Ed.2d 503 (1989). In *Block,* we recognized that

> [i]n enacting § 10 of the Administrative Procedure Act, Congress exercised its power to control standing to contest federal administrative agency action. In doing so, Congress intended to displace the usual prudential limitations on standing. In determining whether parties have standing to contest administrative agency action, therefore, the task of the federal courts is to determine that the requirements of Article III are met, and that the intent of Congress is complied with.

*Id.* at 1165 (citations omitted). *See also Simmons v. Interstate Commerce Commission,* 900 F.2d 1018, 1021 (7th Cir.1990). Consequently, we undertake our duty to discern Congress's intent with respect to judicial review of agency action notwithstanding the plaintiffs' failure to allege the existence of subject matter jurisdiction under the APA in this appeal.[11]

The prudential limitation on standing under § 10 of the APA involves the "zone of interest" test, first articulated by the Supreme Court in *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), later refined in *Clarke v. Securities Industry*

---

Medicaid agreement at any time if she finds, on the basis of her independent determination, that the facility does not meet federal standards.

9. That the federal agencies were not parties to the suit appears to be determinative in the Court's view, for elsewhere it states, "we do not rely ... upon the Government's argument that, *even if* the other agencies were obliged to consult with the Secretary, they might not have followed his advice." *Lujan,* —— U.S. at —— n. 7, 112 S.Ct. at 2143 n. 7.

10. Section 10 provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by action within the meaning of a relevant statute, is entitled to judicial review thereof."

11. In their complaint, but not in their brief to this court, the plaintiffs alleged federal jurisdiction under the Administrative Procedure Act.

*Association,* 479 U.S. 388, 107 S.Ct. 750, 93 L.Ed.2d 757 (1987). In *Data Processing,* the Court viewed standing to sue an administrative agency as involving the question of "whether the interest sought to be protected by the complaint is arguably within the zone of interest to be protected or regulated by the statutory or constitutional guarantee in question." 397 U.S. at 153, 90 S.Ct. at 829. The Court elaborated on this concept in *Clarke:*

> The zone of interest test is a guide for deciding whether, in view of Congress' evident intent to make agency action presumptively reviewable, a particular plaintiff should be heard to complain of a particular agency decision. In cases where the plaintiff is not itself the subject of the contested regulatory action, the test denies a right of review if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit.

479 U.S. at 399, 107 S.Ct. at 757.

■ This court has interpreted *Clarke* to establish the procedure by which lower courts are to discern congressional intent. *See Block,* 823 F.2d at 1166. We begin with the presumption that parties who satisfy the requirements of Article III have standing to contest actions by federal agencies. *Id.* In order to determine whether this presumption has been overcome, we look first to the zone of interest test, which *Clarke* deemed "not to be especially demanding, in particular, there need be no indication of congressional purpose to benefit the would-be plaintiff." 479 U.S. at 399–400, 107 S.Ct. at 757. The question under the test is whether the plaintiff has asserted some interest that has a "plausible relationship" to at least one of the policies or concerns that motivated Congress to take legislative action. *Block,* 823 F.2d at 1166 (quoting *Clarke,* 479 U.S. at 403, 107 S.Ct. at 759). In considering whether the zone of interest test is satisfied, "we must look at all relevant legislation—including other portions of the statute in question and related legislation enacted after the provision at issue." *Id. See also Simmons,* 900 F.2d at 1022.

The zone of interest test does not end the matter, however. Because the issue of reviewability turns on Congressional intent, we must also inquire whether there is any evidence that Congress intended to preclude the plaintiff from bringing suit. *Block,* 823 F.2d at 1166. This evidence is basically the same for determining whether the plaintiff has satisfied the zone of interest test, and "may include 'the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved.'" *Id.* (quoting *Block v. Community Nutrition Institute,* 467 U.S. 340, 345, 104 S.Ct. 2450, 2454, 81 L.Ed.2d 270 (1984)).

■ Applying these principles to the case at hand, it is readily apparent that the plaintiffs have satisfied the zone of interest test under the Medicaid Act. Section 1902(a)(3) of the Act, 42 U.S.C. § 1396a(a)(3), expressly requires states to provide fair hearing procedures for individuals whose claims for Medicaid covered services are denied or not acted upon in a timely manner. The plaintiffs' interest in receiving Medicaid benefits, and in the particular notice and hearing requirements they claim Medicaid's regulatory regime furnishes, has more than a "plausible relationship" to a congressional mandate that states participating in Medicaid must provide certain procedural protections against erroneous deprivation of those benefits. Furthermore, we find no convincing evidence in either the provisions or the history of the Medicaid Act—and the federal defendant has pointed to none—that Congress intended to bar suits by persons in the plaintiffs' situation. The plaintiffs have standing to sue the federal defendant.

## IV.

■ Our conclusion that the district court erred in holding that the plaintiffs lacked standing does not require reversal, for we may affirm the district court's decision to dismiss on any ground that is supported by the record. *American Federation of State, County and Municipal Employees v. Tristano,* 898 F.2d 1302, 1305 (7th Cir.1990); *Jacobson v. Village of Northbrook Municipal Corporation,* 824 F.2d 567, 568 n. 3 (7th Cir.1987). After reviewing the merits of the

plaintiffs' claims, we hold that the Medicaid regulations do not provide the relief they seek, and consequently deny their request for a writ of mandamus.

## A. The Medicaid Regulations

The complaint requests injunctive relief directing the Secretary to supervise Indiana Medicaid to insure the program provides notice and a hearing to recipients whose providers' claims for reimbursement are denied. The plaintiffs claim these procedures are required by 42 C.F.R. §§ 431.200 and 431.206, found in subpart E of the federal regulations governing state Medicaid plans. Entitled "Fair Hearings for Applicants and Recipients," Subpart E implements 42 U.S.C. § 1396a(a)(3) and requires state plans to "provide an opportunity for a fair hearing to any person whose claim for assistance is denied or not acted upon promptly. This subpart also prescribes procedures for an opportunity for hearing if the Medicaid agency takes action to suspend, terminate or reduce services." 42 C.F.R. § 431.200. State agencies are explicitly required to adopt a hearing system that satisfies the due process standards established by the Supreme Court's holding in *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), and additional standards established by the regulations. 42 C.F.R. § 431.205(d).

While subpart E defines the process that is due individuals seeking or receiving Medicaid benefits, its provisions in no way provide for notice and a hearing to a recipient either before or after a *provider's* claim for reimbursement is denied. Rather, the regulations cover an individual's initial and continued eligibility for Medicaid services—hence use of the terms "applicants" and "recipients"—not provider reimbursement determinations. *See* 42 C.F.R. § 431.220. *See also O'Bannon v. Town Court Nursing Center,* 447 U.S. 773, 786–87, 100 S.Ct. 2467, 2476, 65 L.Ed.2d 506 (1980) ("The Government cannot withdraw these direct [Medicaid] benefits without giving the patients notice and an opportunity for a hearing on the issue of their eligibility for benefits.").

The procedural scheme established in the Medicaid regulations is concerned with state agency denial or withdrawal of Medicaid benefits. This case involves neither. Nor is this a case in which a state agency disqualified or terminated a Medicaid services provider because the agency determined that recipients were not eligible for the services they were receiving. In that circumstance, subpart E procedural protections may come into play. *See Haymons v. Williams,* 795 F.Supp. 1511 (M.D.Fla.1992). Here, Indiana Medicaid initially denied reimbursement to the providers because, in the case of Arthur Banks, the provider did not submit the appropriate forms and, in the case of Mrs. Smith, because the provider's claim was not timely presented; the plaintiffs' eligibility for Medicaid services was not an issue.

Nonetheless, the plaintiffs suggest 42 C.F.R. § 431.206(c)(2) as a possible source of the procedural protections they seek. That section requires the state agency to provide information regarding an applicant's or recipient's right to a hearing "[a]t the time of any action affecting his claim." "Action" is defined as "a termination, suspension, or reduction of Medicaid eligibility or covered services." 42 C.F.R. § 431.201. The unambiguous language of § 431.206(c)(2) does not provide a right to notice and a hearing when a Medicaid provider's claim for reimbursement is denied by the state Medicaid agency. *See Maher v. White,* No. 90–4674, 1992 WL 122912, at *4, 1992 U.S. Dist. LEXIS 7537, at *12 (E.D.Pa. June 14, 1992) (under 42 C.F.R. § 431.206, "notice is only required at the time of application and negative changes in benefits").

The reason for the absence of the procedural protections the plaintiffs seek is plain: a Medicaid provider is prohibited from seeking payment from a Medicaid recipient of amounts not reimbursed by the state program. As the Secretary points out, 42 C.F.R. § 447.15 provides that "[a] state plan must provide that the Medicaid agency must limit participation in the Medicaid program to providers *who accept, as payment in full, the amounts paid by the agency....*" (emphasis added). *See Florence Nightingale Nursing Home v. Perales,* 782 F.2d 26, 29 (2d Cir.) (42 C.F.R. § 447.15 prevents health care providers from seeking contributions

from patients beyond the limits set by the Medicaid regulatory scheme), *cert. denied,* 479 U.S. 815, 107 S.Ct. 68, 93 L.Ed.2d 26 (1986).

 The Secretary interprets this language to embrace instances where a state agency refuses payment as well as situations where reimbursement is made according to established rates. When a regulation is supported by the plain language of the Medicaid Act and is adopted pursuant to the Secretary's rulemaking authority, it is entitled to more than mere deference; specifically, it is entitled to legislative effect and is controlling unless arbitrary, capricious, or manifestly contrary to the Act. *See Atkins v. Rivera,* 477 U.S. 154, 162, 106 S.Ct. 2456, 2461, 91 L.Ed.2d 131 (1986). We find that the Secretary's interpretation of 42 C.F.R. § 447.15 is reasonable, and comports with the purposes of the Medicaid Act and Congress's intention to provide assistance to individuals who lack the wherewithal to meet the necessary costs of medical care.

It follows from this interpretation that, because Medicaid recipients are not legally responsible for amounts not reimbursed to providers by the state Medicaid agency, the agency's refusal to pay a provider's claim does not result in a negative change in the recipient's benefits triggering the procedural protections of subpart E. Accordingly, the plaintiffs have failed to state a claim upon which relief can be granted against the Secretary of Health and Human Services under the Medicaid Act or its regulations.[12]

B. *Section 1361 Mandamus Jurisdiction*

 Given our disposition of the plaintiffs' claims under 28 U.S.C. § 1331, we must also deny their request for a writ of mandamus directing the Secretary of Health and Human Services to compel Indiana Medicaid to comply with federal law. Under 28 U.S.C.

§ 1361, the "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." A party seeking a writ of mandamus shoulders the burden of showing that a right to relief is clear and indisputable. *United States v. Dorfman,* 690 F.2d 1217, 1224 (7th Cir.1982).

 This grant of jurisdiction has been substantially limited in scope by recent decisions of this court. *See Scalise v. Thornburgh,* 891 F.2d 640, 647 (7th Cir.1989), *cert. denied,* 494 U.S. 1083, 110 S.Ct. 1815, 108 L.Ed.2d 945 (1990). *See also* 14 Charles A. Wright et al., Federal Practice and Procedure § 3655 (1985) ("The scope of the statute has been limited to actions to compel the performance of ministerial duties that are compelled by law."). The extraordinary remedy of mandamus "is traditionally available to compel a ministerial duty owed by the agency and then only when the statute defining that duty is 'clear and free from doubt.'" *Jarecki v. United States,* 590 F.2d 670, 674 (7th Cir.) (quoting *Smith v. Grimm,* 534 F.2d 1346, 1352 (9th Cir.1976)), *cert. denied,* 444 U.S. 829, 100 S.Ct. 55, 62 L.Ed.2d 37 (1979). *See also Flynn v. Shultz,* 748 F.2d 1186, 1194 (7th Cir.1984), *cert. denied,* 474 U.S. 830, 106 S.Ct. 94, 88 L.Ed.2d 77 (1985). It follows that the judiciary, through a writ of mandamus, cannot compel a federal official to perform any function unless the official is clearly directed by law to do so. *Save the Dunes Council v. Alexander,* 584 F.2d 158, 162 (7th Cir.1978).

 We have resolved these general principles into certain jurisdictional prerequisites. The settled law of this circuit is that mandamus jurisdiction may be invoked only when there is: (1) a clear right in the plaintiff to the relief sought;[13] (2) a plainly de-

---

12. At oral argument, counsel for the state defendant indicated that it would not be difficult to inform Medicaid recipients that they cannot be held liable for provider costs that the state does not reimburse. This court suggests that the state defendant consider this practice, in order to keep Medicaid recipients apprised of a basic defense to collection actions similar to those out of which this action arose.

13. Regarding this element, we have said that "the mandamus remedy is only available 'under exceptional circumstances of clear illegality.'" *Americana Healthcare Corporation v. Schweiker,* 688 F.2d 1072, 1084 (7th Cir.), *cert. denied,* 459 U.S. 1202, 103 S.Ct. 1187, 75 L.Ed.2d 434 (1982) (quoting *Cervoni v. Secretary of Health, Education and Welfare,* 581 F.2d 1010, 1019 (1st Cir.1978)).

fined and peremptory duty on the part of the defendant to do the act in question; (3) no other adequate remedy available. *Scalise,* 891 F.2d at 648. *See also Burnett v. Bowen,* 830 F.2d 731, 739 (7th Cir.1987).

Because federal law does not require the type of notice and hearing the plaintiffs request, they have no clear right to the relief sought and the Secretary has no plainly defined and peremptory duty to enforce the federal rules to provide such relief. *See Scalise,* 891 F.2d at 648; *Homewood Professional Care Center, Ltd. v. Heckler,* 764 F.2d 1242, 1251 (1985); *Jarecki v. United States,* 590 F.2d at 675. We conclude there is no basis in this case for the exercise of mandamus jurisdiction.

## V.

The plaintiffs claim the failure of the Secretary of the Indiana Family and Social Services Administration to provide them with notice and a hearing violates the Medicaid regulations as well as the Due Process and Equal Protection Clauses of the Fourteenth Amendment.[14] The district court granted the state defendant's motion to dismiss for failure to state a claim. *Banks,* 790 F.Supp. at 1440. Once again our review of the district court's decision is *de novo. Villegas v. Princeton Farms,* 893 F.2d 919, 924–25 (7th Cir.1990).

For the reasons set forth in Part IV of this opinion, the claims brought under the Medicaid Act and its implementing regulations are meritless. The state defendant points out, and we note, that Indiana has complied with 42 C.F.R. § 447.15 by requiring that "provider agreement[s] must: ... prohibit the provider from requiring payment from a recipient of medical assistance, except where a copayment is required by law." Ind.Code Ann. § 12–1–7–15.1(b)(2)

(West Supp.1991).[15] The state's administrative code reiterates this stricture:

> A Medicaid provider shall not collect from a Medicaid recipient or from the family of the Medicaid recipient any portion of his charge for a Medicaid covered service which is not reimbursed by the Indiana Medicaid program, except for copayment and any patient liability payment as authorized by law. (See 42 C.F.R. 447.15).

Ind. Admin. Code tit. 470 r. 5–1–3(i) (1991 Cum.Supp.).[16] Indiana Medicaid had no provision for copayments at the time the complaint was filed in this action, and we have been directed to no provision of Indiana law authorizing patient liability.

The plaintiffs nonetheless insist *Stevens v. Department of Public Welfare,* 566 N.E.2d 544 (Ind.App.1991), demonstrates that 42 C.F.R. § 447.15 and its state counterpart do not immunize Medicaid recipients from provider collection suits. In *Stevens,* an injured Medicaid recipient had been moved from an Intermediate Care Facility for the Mentally Retarded (ICF/MR) to a nursing home. When the state agency later reviewed the recipient's placement and concluded that she had healed sufficiently to be returned to an ICF/MR, no such placement was possible. As a result, the recipient spent an additional five months waiting for an available bed at an ICF/MR. *Id.* at 545–46.

During that time, the recipient was informed that her Medicaid coverage for continued care at the nursing home would be terminated. When the recipient was finally placed in an ICF/MR, the Indiana State Board of Public Welfare refused reimbursement for what it considered to be an inappropriate level of care at the nursing home. *Id.* at 546. The recipient sued, claiming that the state's denial of Medicaid services because of improper placement when placement in an

---

**14.** The plaintiffs did not raise specific claims under the Equal Protection Clause in their motion in opposition to the state defendant's motion to dismiss, and the district court did not engage in an equal protection analysis of plaintiffs' claims. Because neither party has briefed the issue on appeal, we decline to take it up.

**15.** The Indiana Administrative Code provides appeal rights to "[a] Medicaid provider who is

dissatisfied with the amount of his reimbursement...." Ind.Admin.Code tit. 470, r. 5–1–3(a) (1991 Cum.Supp.) (recodified without change at Ind.Admin.Code tit. 405, r. 1–1–3(a) (1992)).

**16.** This provision has been recodified without change at Ind.Admin.Code tit. 405, r. 1–1–3(i) (1992).

appropriate facility was impossible violated the Social Security Act and the Due Process Clause. The trial court dismissed the action, concluding that because the recipient had not alleged that she had paid medical bills for services not covered by Medicaid or that the nursing home had demanded payment of her, no case or controversy existed. *Id.*

The court of appeals reversed, stating that the plaintiff "does not dispute that a Medicaid provider may not bill a recipient for covered services; however, she asserts that the services she received after [being informed her Medicaid benefits would be terminated] were *not* covered services." *Id.* at 548. The court found that the services provided by the nursing home were "not covered by Medicaid because [the plaintiff] was not in an approved level of care facility; therefore, [the plaintiff] believes she is liable for the services provided" and a case or controversy necessarily existed. *Id.* at 549.

*Stevens* affords the plaintiffs no help. That case did not involve a dispute over whether a provider could bill a recipient for services covered by Medicaid (the court of appeals' decision suggests that the parties agreed the provider could not), but instead whether services received by a recipient while awaiting placement in an approved facility were in fact covered. If they were not, the recipient's liability was an open question under Indiana law. As the district court in this case observed, however, it is not disputed that the medical services provided to Mr. Banks and Mrs. Smith were covered by Medicaid. *Banks,* 790 F.Supp. at 1438 n. 4. *Stevens* raises an interesting question under Indiana's Medicaid scheme, but one not presented by the facts of this case.[17] Accordingly, we hold that state law prohibits lawsuits such as those filed against the plaintiffs.

This leaves the plaintiffs' constitutional claims under the Due Process Clauses of the Fifth and Fourteenth Amendments, for which they rely on *Easley v. Arkansas Department of Human Services,* 645 F.Supp. 1535 (E.D.Ark.1986).[18] The plaintiffs in *Easley* were Medicaid recipients whose providers' claims were denied by the state agency either because the providers failed to comply with Arkansas Medicaid's procedures or because the medical services rendered were not covered by the Medicaid Act. *Id.* at 1538. The district court held that constitutional due process requires that "Medicaid recipients receive notice that a [provider's] request for payment has been denied for a specific reason and that, as a result, they are either liable or not liable for the unpaid medical bill." *Id.* at 1544.[19]

The court below rejected *Easley's* conclusion. In its view, because federal and state law prohibit a provider from seeking payment from a recipient for amounts not reimbursed by Indiana Medicaid, Mrs. Banks and Mrs. Smith risked no deprivation of benefits that had to be preceded by notice and a hearing. *Banks,* 790 F.Supp. at 1440. It is true that the *Easley* court did not address 42 C.F.R. § 447.15, but considered the plaintiff's due process claims under the rubric of *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), apparently unaware that a federal regulation prohibits providers from seeking payment from Medicaid recipients.

We believe there is a more fundamental reason to disagree with the holding in *Easley,* however. "Procedural due process imposes constraints on *governmental decisions* which deprive individuals of ... 'prop-

---

17. The problem in *Stevens* arises because Indiana's Administrative Code, title 470 r. 5–1–3(i), refers to "Medicaid covered service[s]," while 42 C.F.R. § 447.15 and the Indiana Code, § 12–1–7–15.1(b)(2) (which provision was not cited by the *Stevens* court), contain no such limitation. We merely point out this potential source of confusion, as this case does not require us to resolve it. It should be noted, however, that the problem persists under Indiana's recodified Medicaid scheme. *Compare* Ind.Code Ann. § 12–15–11–3(2) (West Supp.1992) *with* Ind.Admin.Code tit. 405, r. 1–1–3(i) (1992).

18. *Easley* involved a suit against a state Medicaid agency under the Fourteenth Amendment. The *Easley* court's due process analysis, however, is equally applicable to a claim brought under the Due Process Clause of the Fifth Amendment.

19. The *Easley* court also ruled that the Medicaid due process regulations, C.F.R. § 431.200 *et seq.,* require this type of notice and hearing. 645 F.Supp. at 1541, 1545. Our holding in Part IV of this opinion clearly rejects this interpretation.

erty' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Id.* at 332, 96 S.Ct. at 901 (emphasis added). The plaintiffs do not allege that the actions of Radiology and St. Joseph's Medical Center were the actions of either the federal or state government. Rather, the lawsuits that threatened to deprive the plaintiffs of their interest in Medicaid benefits were the work of private entities. Private action, of course, is beyond the reach of the Fifth and Fourteenth Amendments. *See Deshaney v. Winnebago County Department of Social Services,* 489 U.S. 189, 195, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989); *Rendell–Baker v. Kohn,* 457 U.S. 830, 837, 102 S.Ct. 2764, 2769, 73 L.Ed.2d 418 (1982); *Bernstein v. Lind–Waldock & Company,* 738 F.2d 179, 186 (7th Cir.1984). The plaintiffs' constitutional claims therefore must fail.

██ We wish to make it clear that Medicaid recipients should not be prey to unwarranted collection suits by Medicaid services providers. When they contract to participate in the Medicaid program, health care providers agree to accept any remittance by Indiana Medicaid as payment in full for services rendered to Medicaid recipients. For its part, the state agency is responsible for insuring that providers are informed of and comply with federal standards. At oral argument in this case, counsel for the Secretary of the Indiana Family and Social Services Administration assured the court that provider agreements, pursuant to federal law, prohibit providers from acquiring payment from recipients for services covered by Medicaid.[20] It follows that the transfer or sale to collection agencies of spurious provider "claims" against recipients is likewise prohibited.

We remind the state agency as well that the Secretary of Health and Human Services is authorized to withhold or limit federal contributions to a state whose plan is not in compliance with the requirements of the Medicaid Act or that fails to administer an approved plan in accordance with the Act. 42 U.S.C. § 1396a(c). We conclude, however, that federal as well as state standards do not require notice and a hearing when a provider's claim for reimbursement for Medicaid covered services is denied by Indiana Medicaid. Consequently, the relief sought by the plaintiffs must be left to the ministrations of the Congress or the Secretary of Health and Human Services.

We hold that the plaintiffs have failed to state a constitutional due process claim against either defendant upon which relief can be granted. In view of this holding and the holding in Part IV, we need not address Mrs. Banks's claim that the district court erred in denying her motion for conditional class certification.

## VI.

For the foregoing reasons, the order of the district court dismissing the plaintiffs' claims against the Secretary of the United States Department of Health and Human Services and the Secretary of the Indiana Family and Social Services Administration is AFFIRMED.

---

**20.** We rely also on the affidavit of Mike Aronson, staff attorney for the Indiana Department of Public Welfare at the time of the district court proceedings, attached to the state defendant's memorandum of law in support of its motion to dismiss. Paragraph 10 of Mr. Aronson's affidavit states in part:

Indiana's Medicaid provider agreement and manual, referencing Ind.Code § 12–1–7–15.1 and 470 IAC 5–1–3, state that the Medicaid provider shall accept payment as determined by the Department or its agent in accordance with federal and state statutes and regulations as payment in full for all covered services provided to Medicaid recipients, and not to bill the recipient or any member of the recipient's family for any additional charge for these services, excluding any co-payment permitted by law.